ARNOLD A. ABRAMO AND MARY J. ABRAMO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MARY LOUISE ABRAMO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4666–79, 4708–79.     Filed January 29, 1982.

*William H. Gilbert*, for the petitioners in docket No. 4666–79.

*Harvey S. Brown*, for the petitioner in docket No. 4708–79.
*Sandra M. Gilmore*, for the respondent.

OPINION

EKMAN, *Judge*:* These cases are before the Court on petitioners Arnold and Mary J. Abramo's motion for summary judgment and petitioner Mary Louise Abramo's cross-motion for summary judgment, pursuant to Rule 121, Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioners' 1974, 1975, and 1976 Federal income taxes as follows:

| | Arnold and Mary J. Abramo | Mary Louise Abramo | |
| --- | --- | --- | --- |
| Year | Tax | Tax | Sec. 6651(a) |
| 1974 | $2,685 | $1,403 | $364 |
| 1975 | 4,211 | 1,386 | 347 |
| 1976 | 3,654 | 1,249 | 0 |

Petitioner Mary Louise Abramo (Mary Louise) resided in Williamsville, N.Y., when she filed her petition herein. Petitioners Arnold Abramo (Arnold) and Mary J. Abramo resided in Orchard Park, N.Y., when they filed their petition herein. Due to concessions by the parties, the sole issue remaining for decision is whether a separation agreement made by Mary Louise and Arnold fixes the amount which is payable by Arnold for the support of their minor children within the meaning of section 71(b), I.R.C. 1954. Although respondent is a stakeholder in this case, he has submitted a memorandum of law supporting and adopting the position taken by Mary Louise.

The parties agree that no genuine issue exists as to any material fact, and, therefore, a decision may be rendered as a matter of law pursuant to Rule 121, Tax Court Rules of Practice and Procedure. They also agree that the only evidence relevant to our decision is the language of the separation agreement, the relevant paragraphs of which read as follows:

NINTH: * * *
   (a) The wife is to receive Ninety-six Hundred and 00/100 ($9,600.00)

---

*This opinion was prepared by Judge Ekman and reviewed by the Court before his death on Jan. 18, 1982.

Dollars per year from the husband for support and maintenance of herself and the aforementioned children. Said payments are to be made on the 1st and 15th of each month and for tax purposes it is mutually understood that of the Eight Hundred and 00/100 ($800.00) Dollars received monthly, that Two-Hundred and 00/100 ($200.00) Dollars is for the wife and One Hundred Fifty and 00/100 ($150.00) is for each child.

\* \* \* \* \* \* \*

(d) On any gross income of the husband's exceeding Twenty-six Thousand and 00/100 ($26,000.00) Dollars, the wife is to receive twenty-five per cent (25%) of said gross income and not to exceed fifty per cent (50%) of the net income. Said additional amount to be broken down as follows: fifty-percent (50%) for the wife and twelve and one-half per cent (12½%) for each child.

\* \* \* \* \* \* \*

(e) Under no circumstances is the income to the wife and children to be less than Ninety-Six Hundred and 00/100 ($9,600.00) Dollars per year except in the event of the following:

(1) Marriage or death of the wife at which time her proportionate share is to cease.

(2) The death, emancipation or marriage of the above mentioned children, at which time their respective share is to cease.

(3) Death of the husband.

Because Arnold's income exceeded $26,000 for the years in issue, the payments he made to Mary Louise were comprised of two parts: a base amount of $9,600 per annum, attributable under paragraph ninth (a) to his first $26,000 of gross income, and the remainder, attributable under paragraph ninth (d) to gross income which exceeded $26,000.[1]

## 1. Payments Under Paragraph Ninth (a)

Paragraph ninth (a) provides that, for tax purposes, $200 of the base amount paid by Arnold monthly is for Mary Louise, and $150 is for each of their four children. Arnold contends that he may deduct the entire $800 payment and that Mary Louise must include the entire payment in her income pursuant to section 71(a).

As a general rule, support and maintenance payments in divorces or judicial separations are taxed to the recipient spouse under section 71(a), and are deductible by the payor

---

[1]The separation agreement also provided that Arnold's gross income would be reduced for purposes of determining his payments to Mary Louise if he went into private practice, or if he paid high school tuition for two of the children. These provisions do not affect the years before us.

spouse. However, section 71(b) provides that any portion of a support payment which is "fixed" as "a sum * * * payable for the support of minor children" is neither taxable to the recipient nor deductible by the payor.

Arnold asserts that paragraph ninth (a) does not "fix" as child support any part of the base amount within the meaning of section 71(b). Because the allocation to the children in paragraph ninth (a) is prefaced with the phrase "for tax purposes," he claims that Mary Louise is not obligated to use any portion for the support of the children and, since she is not obligated, the child support payments are not fixed. Although Arnold's arguments were well presented, the law is otherwise, and we conclude that paragraph ninth (a) fixes the amounts payable for child support within the meaning of section 71(b).

First, the plain language of section 71(b) and the regulations requires that a separation agreement fix an amount *payable* for child support. It does not require a showing that the amount payable for child support was so *used*. Section 71(b) reads:

Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * *

The regulations stress that the agreement should *specifically designate* an amount, sum, or portion of a payment as payable for child support. They do not suggest that the amounts so designated must be expended for the stated purpose. Sec. 1.71–1(e), Income Tax Regs. The allocation of child support found in paragraph ninth (a) meets the specific language of the section and the regulations thereunder. The phrase "for tax purposes" does not change this result; the amounts specified by the agreement as payable for child support qualify under the statute notwithstanding the purposes for which the allocation may have been made.

In *Commissioner v. Lester*, 366 U.S. 299 (1961), the Supreme Court carefully examined section 22(k) of the 1939 Code, the predecessor to sections 71(a) and 71(b), and concluded that it was enacted in part to allow divorced spouses to shift inter sese the Federal income tax burden on support payments. It based its conclusion upon the congressional enactment of section 22(k) and (u) (the predecessor of sec. 215) of the 1939 Code

which, for the first time, permitted a husband to deduct the entire amount of alimony payments made to his wife, unless their separation agreement had fixed a portion of the payments as child support. As the Supreme Court analyzed section 22(k), "the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion * * * payable for the support of the children," *Commissioner v. Lester, supra* at 304, and at 306, "After all, the parties may *for tax purposes* act as their best interests dictate, provided * * * their action be clear and specific * * * Congress has required no more and expects no less." (Emphasis added.) The explicit language of paragraph ninth (a) is consistent with *Lester* and with judicial authority which follows *Lester*.[2]

Contrary to Arnold's contentions, neither the Supreme Court nor the Congress was concerned with the actual amount of support the children received. Section 22(k) was enacted in part to provide uniform Federal income tax treatment of support payments made between divorced spouses, not to protect the minor children of those spouses. The Supreme Court observed:

in construing that revenue act, we too are unconcerned with the variant legal obligations, if any, which such an agreement, by construction of its nonspecific provisions under local rules, imposes upon the wife to use a certain portion of the payments solely for the support of the children. The Code merely affords the husband a deduction for any portion of such payment not specifically earmarked in the agreement as payable for the support of the children. [*Commissioner v. Lester, supra* at 304.]

We conclude, from the language of section 71(b), the holding in *Lester*, and the legislative history of section 71 that Arnold and Mary Louise were free to allocate the income tax burden for support payments between themselves. They did so, in paragraph ninth (a), by specifically designating a portion of the total payments as an amount payable for child support. The phrase, "for tax purposes," does not prevent this alloca-

---

[2]See, e.g., *Brock v. Commissioner*, 566 F.2d 947, 948 (5th Cir. 1978); *Gammill v. Commissioner*, 73 T.C. 921, 932 (1980); *Young v. Commissioner*, 58 T.C. 629, 640 (1972) (concurrence), affd. 485 F.2d 422 (10th Cir. 1973); *Grummer v. Commissioner*, 46 T.C. 674, 678 (1966); *Borbonus v. Commissioner*, 42 T.C. 983, 988–990 (1964); *Ward v. Commissioner*, T.C. Memo. 1979–378; *Donohue v. Commissioner*, T.C. Memo. 1970–190.

tion from being fixed nor does it make the payments taxable to Mary Louise under section 71(a).

In reaching this conclusion, we are not unmindful of our holding in *Talberth v. Commissioner*, 47 T.C. 326 (1966), cited by Arnold as support for his position. In *Talberth*, the separation agreement and the court judgment granting separation specifically designated an amount payable for child support. As in the case presently before us, the allocations were prefaced with the phrases "for tax purposes" or "for tax purposes only." We held that the use of those phrases precludes the allocation from being fixed because the "amounts were payable to the petitioner and, as in the *Lester* case, she 'is free to spend the monies * * * as she sees fit.' " *Talberth v. Commissioner, supra* at 329. However, soon after our decision in *Talberth*, we held that a simple rider to a separation agreement fixed an amount payable for child support, even though the rider and the agreement did not obligate the recipient spouse to spend the moneys for the children. *Gotthelf v. Commissioner*, 48 T.C. 690 (1967), affd. 407 F.2d 491 (2d Cir. 1969). Then, in *West v. United States*, 413 F.2d 294 (4th Cir. 1969), the Fourth Circuit decided that a separation agreement clause, pursuant to which the recipient spouse "undertook" to spend a certain amount for the children, also sufficiently fixed an amount for purposes of section 71(b), even though the clause and agreement did not obligate the recipient to spend the moneys on the children. The court cited with approval the Second Circuit opinion in *Gotthelf v. Commissioner, supra*, and stressed that "*Lester* requires only words of designation, not words of obligation. No talismanic rubric is demanded; only specification of a certain amount, as here, for child support is needed." *West v. United States, supra* at 295.

Our careful rereading of *Lester* shows that the Supreme Court intended section 71(a) and the doctrine of *Corliss v. Bowers*, 281 U.S. 376, 378 (1930),[3] to apply only when the parties were not sufficiently specific in fixing amounts payable for child support, regardless of amounts actually received by the minor children. Where, as in the case before us, the

---

[3]"[I]ncome that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income." *Corliss v. Bowers*, 281 U.S. 376, 378 (1930).

amount payable for child support is specifically designated, and not left to "determination by inference or conjecture" (*Commissioner v. Lester, supra* at 306), that amount is fixed within the meaning of section 71(b) and is not deductible by the payor spouse, nor taxable to the recipient, regardless of the purposes for which the allocation was made. To the extent that *Talberth v. Commissioner, supra*,[4] may be read to hold that a specific allocation of child support prefaced by the words "for tax purposes" is not fixed within the meaning of section 71(b), it will no longer be followed.

## 2. Payments Under Paragraph Ninth (d)

In addition to the $9,600 annual base payment for support, Mary Louise and the four children are entitled pursuant to paragraph ninth (d) to receive 25 percent of Arnold's gross income in excess of $26,000. Of this additional payment, 50 percent is for Mary Louise and 12½ percent is for each child. Arnold argues that paragraph ninth (d) does not fix a sum for child support within the meaning of section 71(b) and *Commissioner v. Lester, supra*, because the amount of the payments he must make under paragraph ninth (d) varies with his gross income.[5] He contends that when the Supreme Court stated "The agreement must expressly specify or 'fix' a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income" (*Commissioner v. Lester, supra* at 303), it meant that the amount paid for child support must be a numerically fixed amount or a designated percentage of a numerically fixed amount. We disagree.

The *Lester* decision examined an ambiguous agreement in which a specific allocation to the children had not been made. However, the agreement did contain clauses which reduced support payable to the wife by specific amounts when the children married, became emancipated, or died. From those clauses, one could infer that the parties had intended that one-half the payments made to the wife were payable as child support. However, the agreement also contained a reduction

---

[4]And its predecessor, *Talberth v. Commissioner,* T.C. Memo. 1963–295.

[5]Par. ninth (d) does not contain the phrase "for tax purposes."

clause which terminated all payments if the wife remarried, regardless of the status of her children. From this clause, one could infer that none of the payments to the wife were intended for child support. The Supreme Court concluded that when an amount payable as child support could be determined only by inference, it was not an amount fixed for purposes of section 71(b). That is not the present situation.

While the payments Arnold must make to Mary Louise and the children vary with his income,[6] the amount of child support will always equal a specific percentage of his income. When the Supreme Court stated "a sum certain or percentage of the payment" made to the wife sufficiently fixes the amount excludable from the wife's income as child support, it meant that the total payment which the husband must make is to be allocated precisely between wife and children, not that the total payment be numerically fixed. Simply put, the only amount that the Supreme Court required be fixed was the percentage or sum of child support contained in each payment.

In *Giordano v. Commissioner*, 63 T.C. 462 (1975), we approved a similar separation agreement. There, the agreement specified that the children were to receive 80 percent of amounts paid to the wife. However, the precise amounts which were weekly paid to the wife varied depending upon the type of work the husband had done. If he was employed that week as a flight engineer, he was to pay $100; as an airline mechanic, $65; or in any other position, $45. *Giordano v. Commissioner, supra* at 464. While his total weekly payments varied, the percentage of the payments allocated to child support was fixed. The child support payments fixed in paragraph ninth (d) herein are no less fixed than those in *Giordano*.

We note that petitioners could have made the percentage for child support a sum certain by submitting along with the separation agreement an incremental table which showed the precise amounts which would go to the children as Arnold's income increased. *Lester* does not require such a table when its contents can be derived by the much simpler, but equally precise, expedient of a mathematical formula. Nor does *Lester*

---

[6]The agreement provides that Arnold will pay at least $9,600 annually, regardless of his gross income.

require a support agreement between divorcing parties to remain unchanging even as the income of the payor spouse changes. It is undisputed that reduction clauses, which become operative upon the occurrence of future contingencies, can "fix" a portion of a payment for child support after the contingency occurs.[7] So too can total support and maintenance payments vary, as provided in an agreement, without "unfixing" the amount of each payment which is payable for child support within the meaning of section 71(b).

In light of the foregoing, we hold that paragraph ninth (d) fixes the sums which are payable for child support. These amounts are therefore neither deductible by Arnold nor includable by Mary Louise.

### 3. Late Filing Addition, Section 6651(a)

Respondent asserted additions to Mary Louise's 1974 and 1975 Federal income taxes for late filing. In her petition, Mary Louise listed the deficiencies and additions asserted by respondent and stated "All of the aforementioned amounts are disputed by petitioner." She submitted with her brief, in support of her cross-motion, copies of her income tax returns for 1974 and 1975, both of which bore her signature dated 1/7/77. She presented no other evidence, affidavits, interrogatories, or explanations relating to the late filing addition.

Rule 121 provides that a motion for summary judgment may be granted if the entire record shows that there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(b), Tax Court Rules of Practice and Procedure.[8] Respondent agrees that no material factual issue exists in the case; thus, even though respondent has made no formal motion or cross-motion for summary judgment, we may consider the record as if he had made an opposing motion.[9]

---

[7]See, e.g., *Brock v. Commissioner, supra; Weil v. Commissioner,* 240 F.2d 584, 588 (2d Cir. 1957), cited with approval in *Commissioner v. Lester,* 366 U.S. 299, 306 n. 6 (1961); *Patricof v. United States,* 75–2 USTC par. 9596 (S.D. N.Y. 1975).

[8]Rule 121 is derived from rule 56 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.). Thus, we interpret Rule 121 consistently with the interpretations of rule 56, Fed. R. Civ. P. 60 T.C. 1126–1128.

[9]A grant of summary judgment for the nonmoving party is proper if both sides agree there is no material fact in issue. *Lowenschuss v. Kane,* 520 F.2d 255 (2d Cir. 1975); *Procter &*

However, Mary Louise's and respondent's motions must be considered independently, because the burden of going forth with sufficient evidence to establish grounds for summary judgment rests with the moving party.[10]

Under section 6651(a), the Commissioner may add to the tax due upon a return an amount not exceeding 25 percent if the return is filed late, unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect. Respondent determined that Mary Louise had not shown reasonable cause, which we accept as true for purposes of examining Mary Louise's motion.[11] Mary Louise has adduced no evidence to show that her 1974 and 1975 returns were timely filed, or were filed before the 25-percent maximum addition had accrued. Neither has she introduced evidence to show that her failure to file timely was due to reasonable cause and not willful neglect. On the record before us, Mary Louise's sole support for summary judgment is her petition, in which she listed the asserted deficiencies and additions determined by the Commissioner and stated "All of the aforementioned amounts are disputed by petitioner." Because the record is almost completely devoid of facts which would support Mary Louise's motion as a matter of law, we cannot render summary judgment for her on the issue of the late filing penalty.

Examining respondent's deemed motion for summary judgment, we again conclude that there are no genuine issues of material fact to be decided at trial. Respondent's determinations are presumed correct, and he is entitled to a judgment in his favor at trial, if his determinations are uncontroverted. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. When, as here, the moving party has made out a prima facie case which would entitle him to a decision in his favor if uncontroverted at trial, summary

---

*Gamble Independent Union of Port Ivory, N.Y. v. Procter & Gamble Manufacturing Co.*, 312 F.2d 181 (2d Cir. 1962); *Harcourt, Brace & World, Inc. v. Graphic Controls Corp.*, 329 F. Supp. 517 (S.D. N.Y. 1971). All of these cases discuss rule 56, Fed. R. Civ. P.

[10]*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (discussing rule 56, Fed. R. Civ. P.).

[11]The moving party concedes the absence of a factual issue and truth of the nonmoving party's allegations for purposes of her own motion. *Cram v. Sun Insurance Office Ltd.*, 375 F.2d 670 (4th Cir. 1967); *Begnaud v. White*, 170 F.2d 323 (6th Cir. 1948); *M. Snower & Co. v. United States*, 140 F.2d 367 (7th Cir. 1944). These cases discuss rule 56, Fed. R. Civ. P.

judgment will be granted unless the opposing party offers competent evidence showing there is a genuine issue as to a material fact.[12] Mary Louise's statement in her pleadings that she disputes "All of the aforementioned amounts" is not evidence competent to show that a genuine issue as to the addition exists. It is merely the assertion of her legal position, devoid of factual support. Thus, we conclude that, to the extent Mary Louise received taxable income in 1974 and 1975,[13] she is liable as a matter of law for the addition to taxes for late filing under section 6651(a).

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

PARKER, *J.*, dissenting: I respectfully dissent from the majority opinion. It has been over 20 years since the Supreme Court instructed us to apply section 71(b) or its predecessor just as the Congress wrote it. *Commissioner v. Lester*, 366 U.S. 299 (1961). It has been over 15 years since this Court, in a case exactly like the present one, squarely held that an agreement where the allocation is stated to be "for tax purposes" or "for tax purposes only" does not "fix" or "specifically designate" an amount which is payable for child support within the holding of *Lester. Talberth v. Commissioner*, 47 T.C. 326 (1966). At this late date, we should not overrule *Talberth* and again unsettle one bit of solid ground in this much litigated morass of alimony versus child support.

Moreover, in my opinion, the *Talberth* case was correctly decided and should be followed. Section 71(b) and the *Lester* case mandate that the agreement or court decree "fix" or "specifically designate" an amount of money or a part of the payment as a sum which is payable for child support. I agree with the majority that that does not require a showing that

---

[12]C. Wright and A. Miller, 10 Federal Practice and Procedure: Civil, sec. 2727 (1973) (discussing rule 56, Fed. R. Civ. P., as applied in *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

[13]From our holdings in parts 1 and 2, *supra*, it is clear that the amounts Mary Louise received from Arnold, which were fixed as child support, were not taxable to her.

the amount payable for child support was so used; that is because our inquiry must be directed solely to the terms of the decree, instrument, or agreement, and we cannot resort to extrinsic evidence of any type. However, the decree, instrument, or agreement must do what the statute requires. In the *Talberth* case and in this case, the use of the language "for tax purposes" or "for tax purposes only" in the agreement (or court decree) showed that the parties did not really make the allocation they purported to make. I would follow *Talberth* here.

The decree in the *Talberth* case and the first sentence of paragraph ninth (a) in this case provided that the wife was to receive all of the payments from the husband for the support of herself and the children. That is the classic *Lester*-type formulation making the entire amount taxable to the wife and deductible by the husband. Then the next sentence purports to make an allocation between alimony for the wife and support payments for the children but "for tax purposes." In my opinion, that does not suffice to change the initial characterization. *Lester* requires that the writing on its face unequivocally "fix" or "specifically designate" the amount payable for child support. The majority's interpretation of the parties' intentions may be a reasonable one, but these matters cannot be left to inferences. The writing is ambiguous here, and, therefore, the *Lester* requirement is not met. I would hold that the agreement did not "fix" or "specifically designate" an amount as child support under *Lester* and section 71(b).

SIMPSON, *J.*, agrees with this dissenting opinion.