STEVEN HOWARD PARKIN AND LINDA MARY FALES PARKIN, petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parkin v. Commissioner
Docket No. 16169-84.
United States Tax Court
T.C. Memo 1986-59; 1986 Tax Ct. Memo LEXIS 549; 51 T.C.M. (CCH) 441; T.C.M. (RIA) 86059; February 10, 1986. Gregory *550 K. Wanless and Robert K. Strouse, for petitioners. Erin Collins, for the respondent. AARONS
MEMORANDUM FINDINGS OF FACT AND OPINION AARONS, Special Trial Judge: This case was assigned to Special Trial Judge Aarons pursuant to the provisions of section 7456(d)(3) and Rules 180, 181 and 182 [1]. Respondent determined a deficiency in petitioners' Federal income tax for 1981 in the amount of $6,973, together with an addition to tax under section 6651(a) in the amount of $997. After concessions set forth in the Stipulation of Facts, the remaining issues are: (1) whether Parkin Laboratories, Inc. qualified as a valid subchapter S corporation in 1981; (2) whether petitioners are entitled to an investment tax credit in 1981; and (3) whether petitioners are liable for the delinquent filing addition under section 6651(a). To the extent set forth in the Stipulation of Facts, the facts are so found except as qualified below. At the time the petition was filed herein, petitioners *551 resided in Riverside, California. Petitioner Steven H. Parkin (hereinafter referred to as "petitioner" unless otherwise indicated) is employed in the Department of Chemistry at the Irvine campus of the University of California, and also is employed on night duty at Mission Community Hospital. Commencing in 1979, petitioner endeavored to establish himself in the operation of a laboratory for the manufacture of products used in anesthesia. He established Pharmachem Laboratories in 1979, but that business was abandoned shortly thereafter. On August 18, 1980, petitioner caused a new corporation, Parkin Laboratories, Inc. (hereinbelow referred to as "Labs") to be incorporated in Delaware. Labs was formed to manufacture anesthetic products. Although the Stipulation of Facts states that Labs began doing business on August 18, 1980, this "fact" was flatly contradicted by petitioner on cross examination. He testified (referring to 1981): * * * since at that time, all we were doing was preparing documentation for the FDA, there effectively was no business for Parkin Laboratories, Inc., per se. All the business that was transacted, was transacted in the form of a sole proprietorship. *552 We bought and sold some lab equipment. But in apparent contradiction to that testimony, the Stipulation of Facts recites: Parkin Laboratories, Inc., substantiated their 1981 taxable year expenses which resulted in a loss in the amount of $28,837. Petitioners carried their pro rata share of that loss, in the amount of $26,968, on to their personal return, which was an amended return on Form 1040X for the year 1981. Prior to the formation of Labs, petitioner had procured a "package" of forms and instructions from The Company Corporation of Delaware. The package contained a minute book and minute forms, corporate charter, articles and by-laws, stock certificates, stock transfer log, and a Form 2553 for the election of Subchapter S, as well as a form for qualifying the stock under section 1244. The agenda prepared by petitioner for the first meeting of the Board of Directors included as one of its items: "Qualify Corporation as a 'Subchapter S' Corporation". The minutes of that meeting (on September 18, 1980) reflect approval of Subchapter S status and direct that the officers take the necessary steps. The minutes of the special meeting of stockholders (November 10, 1980) *553 are silent relative to Subchapter S. At some time in 1980 petitioner had discussed with a prospective business associate the tax advantages of a Subchapter S corporation and had indicated his intention of qualifying Labs under Subchapter S. Petitioner may have prepared the Form 2553 in September 1980. He may have had it "xeroxed" at some time and any have placed it in an envelope addressed to the Internal Revenue Service Center in Philadelphia --- so addressed, he stated, because Labs was a Delaware corporation. From the time that the envelope was assertedly placed in the outgoing box there is an absence of direct testimony or other proof as to its actual mailing. However, it was part of the routine duties of Jeffrey Parkin (petitioner's son) to pick up the mail each day from the outgoing box and deposit it in the Post Office mail box. When a Form 2553 is received by the Philadelphia Service Center, it goes through several steps, including assignment of an employer identification number if none has been previously assigned. When the form has been finally accepted, it is so stamped and a copy of the accepted form with accompanying letters is mailed to the taxpayer. If the Form *554 2553 is incomplete, the original is returned to the taxpayer with instructions (after the Service Center has assigned the identification number). The records of the Philadelphia Service Center do not reflect that a Form 2553 was ever processed for Labs. Nor did petitioner or Labs receive any documents from the Service Center relating to the Form 2553. On November 10, 1980, petitioner made gifts of Labs stock to his son Jeffrey, his daughter Stacy, and his then fiancee Linda Fales. Each gift was 250 shares. None of the donees filed consents to Labs' Subchapter S status. Petitioners filed their original joint return for 1981 at an undisclosed time after its due date. That return did not pass through losses from a Subchapter S corporation. The notice of deficiency was issued February 27, 1984. On March 3, 1985, petitioner Linda Mary Fales Parkin executed and filed a Subchapter S corporate return on Form 1120S for Labs' taxable year 1981. That return reflected that the Small Business election had been made in August 1980. The record does not reflect whether or not any corporate returns were filed for Labs for years subsequent to 1981. The March 3, 1985 return states that *555 the business activity of Labs was "modification/rebuilding scientific instruments and measuring devices". On April 9, 1985, petitioners filed their Form 1040X, amending their 1981 return and claiming the $26,968 pass through loss from a Subchapter S corporation, i.e. Labs. The original 1981 individual return was prepared by Tony Rose, a CPA. Petitioner's testimony was that he informed Mr. Rose of Labs' status as a Subchapter S Corporation but that because, as set forth above, Labs and transacted no business in 1981, Mr. Rose told petitioner not to file a Subchapter S return. [2] According to petitioner the Form 1120S, filed March 3, 1985, was suggested by an Internal Revenue Service auditor, along with an amended individual return for 1981. The investment tax credit (for new section 38 property) in the amount of $787 claimed by petitioners on their original return, related to a computer, printer and software. The only disputed aspect of this issue is: who first placed these assets in service? The Court finds that the assets *556 in question were used by petitioner, individually, for business purposes on several business projects in the spring of 1981, prior to the incorporation of Labs and the transfer of these assets at the end of 1981 to Labs by way of a contribution to capital. No proof was offered by petitioners in respect to the delinquency addition under section 6651(a). The following are our ultimate findings of fact: 1. Petitioners have not established the mailing of the Form 2553, Election by a Small Business Corporation. 2. Petitioners have established that they were the original users of the property as to which an investment tax credit was claimed. 3. Petitioners have not established reasonable cause and absence of willful neglect for failure to timely file their 1981 return on Form 1040. The principal issue in this case is whether (as petitioners contend) Labs made an effective election in 1980 under section 1372 to be treated an an electing small business corporation under Subchapter S. Section 1372(c)(3) provided that such election shall be made in the manner prescribed by the Regulations. Section 1.1372-2, Income Tax Regs., as in effect in 1980, provided that the election should *557 be made by filing Form 2553 (which also includes a form for the required shareholders' consents). The filing of the election form is, of course, critical in determining whether Labs achieved Subchapter S status. Whether or not Form 2553 was filed is a question of fact. On questions of fact (with certain exceptions not relevant here), there is a presumption of correctness in respondent's determination, and the taxpayer-petitioner has the burden of proof in rebutting that presumption. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). The Court has concluded that petitioners' proof on this issue did not suffice to rebut that presumption. There was no direct testimony that the Form 2553 was actually mailed. Contrast Mitchell Offset Plate Service, Inc. v. Commissioner,53 T.C. 235 (1969); Leve v. Commissioner,T.C. Memo. 1985-255 and Zaretsky v. Commissioner,T.C. Memo. 1967-247, relied upon by petitioners. Even though we were to accept at face value the testimony that the Form was prepared and positioned for mailing [3], the only fact that supports actual mailing is the routine of Jeffrey Parkin. Fully *558 counterbalancing such routine is the routine of the Philadelphia Service Center, pointing to the conclusion that the Form or a copy would have been returned one way or another to petitioners if it had indeed been received by that Center. Then, adding to the counterbalancing in respondent's favor are the inconsistencies between the Stipulation of Facts and petitioner's testimony as to when Labs really began to do business, the inconsistencies within petitioner's own testimony on this score, and the inconsistency as to the month in 1980 when the Subchapter S election was allegedly mailed. The total picture, accented particularly by the three year delay in filing the 1120S and the 1040X forms for 1981 (after the issuance of the notice of deficiency), lends itself to the conjecture that the Subchapter S status of Labs was not perfected (in petitioner's mind) until, in hindsight in 1985, the advantages of petitioner's present position became apparent. *559 We need not resolve such conjecture because all the cumulative doubts we have as to what really happened with the Form 2553 add up to zero doubt in the mind of the Court as to petitioners' failure to carry their burden of proof on this issue. [4]
With respect to the disallowance of the investment tax credit, our findings dispose of the purely factual question which is the only area of disagreement between the parties. The original use of the property commenced with petitioners and they are entitled to the investment tax credit. See section 48 (b)(2). Petitioners offered no proof as to the delinquency addition under section 6651(a). They have failed to carry their burden of proof *560 on this issue. See Abramo v. Commissioner,78 T.C. 154, 162-164 (1982). To reflect the foregoing, as well as the concessions set forth in the Stipulation of Facts, Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court rules of Practice and procedure.↩
2. At another point in the trial, petitioner testified (with respect to Labs): "The first sale of anything we had was in August or September of 1981."↩
3. There was no proof as to the use of the proper address in the alleged mailing of Form 2553 to the Philadelphia Service Center. Nor was anything done to secure tangible evidence of mailing (such as a receipt from the Postal Service).↩
4. Respondent also appeared to be taking the position at trial that any election under Subchapter S would have been terminated by the failure of the three donee shareholders to file consents. That position would be untenable. The Revenue Act of 1978 (Sec. 343(b)(2), Pub. L. 95-600, 92 Stat. 2844), changed the rules on this score and disqualifies a Subchapter S corporation only if new shareholders affirmatively refuse to consent within 60 days after acquiring their stock. Section 1372(e)(1)(A).↩