KENNETH G. LIND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lind v. Commissioner
Docket No. 8471-91
United States Tax Court
T.C. Memo 1993-286; 1993 Tax Ct. Memo LEXIS 288; 65 T.C.M. (CCH) 3043; June 30, 1993, Filed *288 Decision will be entered under Rule 155. Kenneth G. Lind, pro se. For respondent: J. Paul Knap. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined a $ 54,121 income tax deficiency for petitioner's 1987 taxable year. Respondent also determined additions to tax under sections 6653(a)(1)(A) and 6661[1] in the amounts of $ 2,706 and $ 13,530, respectively. Additionally, respondent determined that section 6653(a)(1)(B), which provides for 50 percent additional interest on the portion of any deficiency redetermined that is attributable to negligence, is also applicable. The deficiency is attributable to a single adjustment in the amount of $ 161,799. That amount represents the total of funds loaned by a corporation controlled by petitioner to a family partnership operated by petitioner. The main issue for our consideration concerns whether that indebtedness was discharged and if it resulted in income taxable to petitioner. *289 FINDINGS OF FACT [2]
Petitioner's legal residence was in Wayzata, Minnesota, at the time of the filing of his petition in this case. Midwest Elevator, Inc. (Midwest), was incorporated in 1971 and was controlled by petitioner and his family and operated by petitioner at all times relevant to the issue in this case. Midwest was engaged in the elevator repair business and never declared a cash dividend. Lind Enterprises (Lind) was a family partnership established in 1979 and was comprised of petitioner and his two adult children, as partners. Petitioner acquired his children's interest in Lind in 1986. Although petitioner purchased his children's interest in Lind, Schedules K-1 were issued to the children for 1987. After petitioner bought the children's interest in Lind, the children formed Lind Enterprises, Inc. (Enterprises), for the purpose of holding their shares of stock or ownership interest in Midwest. At some point after *290 1986, the real estate of Lind was also transferred to Enterprises, and at the end of 1987 Lind had one obligation (a loan payable to Midwest) and one asset (a lease or rental arrangement with Midwest as lessee). Lind was used for Midwest's real property needs because petitioner's accountant had advised that Midwest should not own any real property. Lind was in the business of leasing buildings. All capital used in connection with Lind was loaned from Midwest. From 1979 through 1987, Midwest had loaned Lind a total of $ 161,799. The loans were recorded in Midwest's books. No repayments were made on these loans. Midwest did not demand payment or attempt to collect any part of the loans. Lind, for consideration of $ 26,007.50, acquired unimproved realty near Hill City, South Dakota. During 1986 and 1987 a building was erected on the Hill City land. At that time Lind already leased realty in Minneapolis to Midwest for its business premises. The newly acquired property was used to erect a warehouse for Midwest in South Dakota. This property had been zoned for residential use since 1984. There is no indication that the Hill City property was used by Midwest in the elevator *291 business. Beginning in 1991 the building was used to store classic and antique automobiles and motorcycles. Late in 1988, one of respondent's agents examined Midwest's 1986 taxable year. The agent raised the question of whether the loans reflected from Midwest to Lind were actually constructive dividends to petitioner. Petitioner advised the agent that the loans were valid and that Lind intended to repay the loans with the rent paid to it from Midwest and that rental payments had been made from August through December 1986. The agent checked Lind's 1986 partnership return and no rental income had been reported from Midwest, and petitioner's accountant advised that Lind's return would be amended to include the rental income. Based upon these representations, respondent's agent dropped the constructive dividend issue. Petitioner drafted notes, dated February 8, 1989, in the amounts of $ 50,000 and $ 86,074.07 to himself from Midwest, which were allegedly for unpaid wages from Midwest. Petitioner caused an additional note for unpaid wages from Midwest to issue in the amount of $ 17,500, dated April 17, 1990. None of these notes were paid by Midwest. No accrued salary obligation *292 appeared on Midwest's books. Late in 1989 another agent of respondent examined the 1987 tax year of Midwest. Respondent's agent inquired of petitioner about the loan from Midwest to Lind and more specifically why the loan was reflected on Midwest's balance sheet for 1987 and not for 1988. Respondent's agent also inquired whether Midwest was paying rent, and petitioner stated that Midwest had not paid rent and that it had broken the lease with Lind. Petitioner, without indicating when, stated that the loan from Midwest was uncollectible. In connection with the examination by respondent's agent, petitioner did not mention or discuss any unpaid wages due to him from Midwest. No income was reflected on Lind's 1987 partnership return. Petitioner filed for bankruptcy during March 1990 and was discharged from the proceeding on June 18, 1990. The bankruptcy case was closed December 1, 1990. OPINION Respondent determined that petitioner had $ 161,799 of additional income for 1987 attributable to Lind, a partnership. Respondent explains that the $ 161,799 is income from the discharge of indebtedness due from Lind to Midwest. Petitioner bears the burden of showing that respondent's *293 determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). For reasons substantially unexplained in the record, petitioner's elevator service business was operated through a corporation (Midwest), and various real estate transactions and lease arrangements were handled through a partnership and other corporations. The ownership interests in these entities changed on a regular basis, depending upon the needs of the moment. Although the interest holders of the various entities may have changed, they were limited to petitioner and members of his immediate family. It is clear that petitioner was in control and that his family was involved, to the extent permitted by petitioner, as possible beneficiaries of any business success that petitioner and his entities may have experienced. The record is sketchy as to which entity, at any particular time, owned various of the assets, and it appears that these entities were created and used at petitioner's whim depending upon advice received or petitioner's own perception, depending upon the occasion. There is very little documentation supporting any of petitioner's claims. The record, *294 however, does reflect the following: (1) Midwest, over a period of years, loaned funds to Lind, which in 1987 totaled $ 161,799; (2) the loan was reflected on the business balance sheet of Midwest for 1987 but was not reflected for 1988; (3) petitioner advised respondent's agent that the $ 161,799 was uncollectible; (4) no payments were made on the loan; and (5) Midwest did not make rental payments for 1987 and never paid a dividend. The discharge of debt constitutes income to the debtor. Sec. 61(a)(12). The named debtor was Lind, a partnership. We find it peculiar that petitioner was the only partner of Lind at the conclusion of 1987. Although there is some indication that petitioner's children may have been partners at some time during 1987, neither petitioner nor respondent argues that the children should be considered partners at the time of the forgiveness or discharge of indebtedness, which appears to have been at yearend. Also neither party questions respondent's determination that petitioner had income from the Lind partnership, at a time when he was the only partner. In any event, it does not appear that the result would differ depending upon the existence of a partnership *295 entity. Petitioner does not deny any of the documented facts listed above, but instead argues that Midwest owed him for unpaid and accrued salary approximating the amount of the loans outstanding between Midwest and Lind. Although petitioner's position on this point seems somewhat unclear, the essence of his position appears to be that the obligations due him from Midwest should cancel out any debt from Lind to Midwest whether that debt was forgiven or not. It should be remembered that the majority of the alleged unpaid salary from Midwest was purportedly evidenced by Midwest notes drafted by petitioner shortly after respondent's agent examined Midwest's 1986 tax return. More importantly, petitioner has not reported the alleged income due as salary from Midwest and has no basis in same. If petitioner is owed salary as he alleges, it would not shield Lind or him from discharge of indebtedness income. Petitioner also contends that he was insolvent or in bankruptcy and that any income from discharge of indebtedness would be excludable from his gross income under section 108. Section 108(a) excludes from gross income amounts which would have been includable due to discharge of *296 indebtedness if the discharge occurs in a bankruptcy case, the discharge occurred when the debtor was insolvent, or the indebtedness is qualified farm indebtedness. Petitioner has failed to show he or Lind was insolvent during 1987, the time of the discharge. Additionally, the parties have agreed that petitioner's bankruptcy and discharge from same did not occur until 1990. Finally, petitioner was in control of the situation during the period under consideration, and he attempted to counter the inquiries of respondent's agents by various approaches. We do not find any of petitioner's attempts to be successful. Petitioner has failed to show error in respondent's determination that the forgiveness or discharge of indebtedness is taxable to petitioner for 1987. Respondent also determined that petitioner was liable for additions to tax under sections 6653(a)(1)(A) and (B) and 6661(a). Petitioner bears the burden of proof with respect to such determinations. Rule 142(a); Clayden v. Commissioner, 90 T.C. 656, 677 (1988); Abramo v. Commissioner, 78 T.C. 154, 162-164 (1982); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). *297 Negligence, within the meaning of section 6653(a), has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent determined a single adjustment in connection with petitioner's reporting of his 1987 income and deductions. That determination was made in connection with a technical matter under which debt between two related entities controlled by petitioner was considered to be income attributable to the discharge of indebtedness. We also note that respondent had conducted an examination in connection with the 1986 tax year of petitioner's business entities. In connection with that examination, petitioner had convinced respondent's agents that the very transaction in question was not a constructive dividend to him in an earlier year. Accordingly, we find that petitioner is not liable for additions to tax under section 6653(a)(1)(A) and (B) on the entire underpayment of tax for the taxable year 1987. Respondent also determined an addition to tax for substantial understatement of tax under section 6661 for the 1987 taxable year. Section *298 6661(a) provides for a 25-percent addition to tax if there is a substantial understatement of tax. An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown for the taxable year or $ 5,000. An "understatement" does not include an amount attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment". Sec. 6661(b)(2)(B)(i). Additionally, an understatement does not include any item for which there was adequate disclosure. Sec. 6661(b)(2)(B)(ii). Petitioner has presented no evidence or argument concerning this addition to tax. Accordingly, the substantial understatement addition is applicable for the 1987 taxable year if the threshold understatement is exceeded. That determination will be made in connection with the Rule 155 computations. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties' stipulation of facts and exhibits are incorporated by this reference.↩