T.C. Memo. 1998-47

UNITED STATES TAX COURT

WILLIAM SPENCER BACH AND BARBARA RUTH BACH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 330-95.                        Filed February 5, 1998.

William S. Bach and Barbara R. Bach, pro sese.

<u>Karen E. Chandler</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 1987 Federal income tax and additions to tax as follows:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| $308,201 | $61,705.20 | $146,064.61 | 50 percent of the interest due on $308,201 | $77,038.75 |

After concessions,[1] the issues for decision are: (1) Whether petitioners are required to recognize and report gains resulting from their disposition of various partnership interests; (2) whether petitioners are entitled to bad debt deductions for alleged loans from their wholly owned corporation to various partnerships; (3) whether petitioners are liable for a tax on a distribution received in 1987 from an individual retirement plan (IRA); (4) whether petitioners are liable for tax on their excess contributions to an IRA during 1987; (5) whether petitioners are liable for an addition to tax pursuant to section 6651(a)(1)[2] for failure to file timely their 1987 return; (6) whether petitioners are liable for additions to tax pursuant to section 6653(a)(1)(A) and (B); and (7) whether petitioners are liable for an addition to tax pursuant to section 6661.

---

[1]Respondent concedes that: (1) $34,574 of losses disallowed in the notice of deficiency is properly deductible; (2) there were no unreported gains in the amount of $8,421 from the sale of stocks; and (3) there is an unreported loss of $336 from petitioners' sale of stock funds.

Petitioners concede that: (1) $188,957 of losses disallowed in the notice of deficiency is not deductible in 1987; (2) unreported rental income of $5,133 must be included as income in 1987; (3) they failed to report interest income of $1,711, which must be included in 1987; and (4) they received an IRA distribution of $1,830, which they failed to report as income on their 1987 Federal income tax return.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners resided in Potomac, Maryland, at the time they filed their petition.

During 1986, 1987, and 1988, Mr. Bach worked as a real estate broker for a business known as ISI Real Estate Co., which was owned in part by petitioners.[3] In addition, Mr. Bach was also the sole shareholder of Investment Syndications, Inc. (ISI), which was incorporated in May 1981. During the same years, Ms. Bach worked as an accountant for RMR & Associates, Inc.

As of January 1, 1987, Mr. Bach was a general partner of America/Bradley Limited Partnership (America/Bradley). The principal business of America/Bradley was real estate construction. Mr. Bach owned a 22.5-percent interest in America/Bradley and had a deficit capital account balance of $448,756 as of January 1, 1987. The total of all America/Bradley partners' capital accounts decreased from a deficit of $996,674 at the beginning of 1987 to a deficit of $2,853,708 at the end of 1987. During 1987, Mr. Bach assigned his entire interest in

---

[3]Petitioners conducted their real estate business under the name of ISI Real Estate Co. and represented on their 1987 Schedule C that Ms. Bach owned 60 percent of the business and Mr. Bach owned 10 percent of the business. The ownership of the remaining 30 percent of ISI Real Estate Co. is unclear from the record.

America/Bradley to Mr. Marvin Goldstein, who assumed Mr. Bach's capital account.[4]

As of January 1, 1987, Mr. Bach was a general partner of Jama Mobile Home Parks Limited Partnership (JAMA). The principal business of JAMA was the rental of trailers in Jacksonville, Florida. As of January 1, 1987, Mr. Bach owned a 21.875-percent loss-sharing interest in JAMA and had a deficit capital account balance of $358,312.[5] Also, as of the beginning of 1987, JAMA had outstanding a total of $931,924 in mortgages, notes, and bonds payable in 1 year or more.

During 1987, Mr. Bach made no capital contributions to JAMA. During 1987, all the property of JAMA was sold or foreclosed upon, and the partnership filed a final U.S. Partnership Return of Income (Form 1065). On Form 1065, JAMA reported a gain of $644,600 on the sale of its assets. On Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., attached to petitioners' 1987 return, Mr. Bach's allocable share of net gain under section 1231 was $147,717. At the time he disposed of his

---

[4]Although the exact date that Mr. Bach assigned his interest in America/Bradley to Mr. Goldstein is not clear from the record, Mr. Bach received an allocable share of income, loss, deduction, or credit from the partnership during 1987. The assignment was treated as taking place at some point during 1987 when Mr. Bach's deficit in his capital account was $448,756.

[5]Mr. Bach had a 22.916-percent profit-sharing interest and ownership of capital interest.

interest in JAMA during 1987, Mr. Bach had a deficit capital account balance for his partnership interest in JAMA of $213,535.

As of December 31, 1986, Mr. Bach was a general partner of the Bay Country Limited Partnership (Bay Country). The principal business of Bay Country was real estate rental and construction. As of December 31, 1986, Mr. Bach owned a 23.75-percent profit, loss, and capital-sharing interest in Bay Country and had a deficit capital account balance of $184,802. As of the end of 1986, Mr. Bach's share of nonrecourse liabilities was $588,719.

On June 24, 1987, the partners sold their interests in Bay Country to Rockville Central Building Corp. Number One and Rockville Central Building Corp. Number Two for $50,000. Mr. Bach received $5,000 on the sale of his interest in Bay Country. At the time he sold his interest in Bay Country, Mr. Bach had a deficit capital account balance of $184,802. Petitioners did not report on their 1987 Federal income tax return any gain regarding the sale of Mr. Bach's partnership interest in Bay Country.

As of January 1, 1987, Mr. Bach was a general partner of the Diamond Farms Limited Partnership (Diamond Farms) and had a 21.25-percent profit, loss, and ownership of capital interest in the partnership. The principal business of Diamond Farms was the rental of real estate. As of the beginning of 1987, Mr. Bach had a deficit balance in his Diamond Farms capital account of $65,072.

On February 17, 1987, Mr. Bach assigned his interest in Diamond Farms to Mr. Goldstein. On Schedule K-1 attached to petitioners' 1987 return, Mr. Bach reported his distributive share of loss from Diamond Farms in the amount of $1,751. Petitioners' Schedule K-1 also reflects capital contributed during 1987 in the amount of $66,823, which represented Mr. Bach's total deficit capital account assumed by Mr. Goldstein as of the date of transfer. Petitioners did not report any gain from the assignment of Mr. Bach's partnership interest in Diamond Farms on their 1987 Federal income tax return.

As of December 31, 1986, Mr. Bach was a general and limited partner of the Wazee Street Limited Partnership (Wazee Street). Mr. Bach owned a 1.44-percent profit, loss, and ownership of a capital share as a general partner and a 14.08-percent share of profits and losses as a limited partner.

As of December 31, 1986, Mr. Bach had a deficit balance in his Wazee Street general and limited partner's capital accounts of $3,661 and $35,771, respectively. Mr. Bach had allocable general and limited partner's shares of nonrecourse partnership debt of $14,228 and $139,120, respectively.

During 1987, the property owned by Wazee Street was foreclosed upon and sold. Wazee Street had outstanding debt as of the date of foreclosure of $1,227,454. Mr. Bach's allocable share of the partnership debt at the time of foreclosure was

$190,501. Wazee Street did not file a partnership return for 1987.

As of December 31, 1986, Mr. Bach owned a 37.5-percent interest as a general partner of 4139 Glenwood Joint Venture (Glenwood). Also, as of December 31, 1986, Mr. Bach had a deficit capital account balance of $4,198 and an allocable share of nonrecourse liabilities of $47,423.

On February 3, 1987, Mr. Bach assigned his interest in Glenwood to Mr. Richard Segal for consideration of $10 and Mr. Segal and Trans International Management, Inc., assigned their interests in JAMA to Mr. Bach. Mr. Bach's deficit capital account balance of $4,198 did not change between December 31, 1986, and the date of assignment. Petitioners did not report any gain in relation to the disposal of Mr. Bach's interest in Glenwood on their 1987 Federal income tax return.

As of January 1, 1987, Mr. Bach was a general and limited partner of Russell Street Limited Partnership (Russell Street). Russell Street's primary business was investing in real estate. Mr. Bach's percentage interests in Russell Street as a general and limited partner were 24 percent and 1 percent, respectively. As of the beginning of the year, Mr. Bach's capital account for his interest as a general partner had a deficit balance of $51,349.

Sometime in 1987, Russell Street sold all its assets and filed its final tax return. As of the end of 1987, Mr. Bach no

longer held any partnership interest in Russell Street. As reported by Russell Street on the 1987 partnership Schedules K-1, Mr. Bach received a general and limited partner's allocable share of net long-term capital gain of $42,156 and $1,756, respectively, and deductions related to partnership portfolio income of $4,990 and $208, respectively. As a result of these distributive shares of income and deduction, Mr. Bach's general partner capital account deficit was reduced to $14,183 and his limited partner capital account deficit was reduced to $6,822. Petitioners did not report any gain in relation to the disposal of Mr. Bach's interest in Russell Street on their 1987 Federal income tax return.

On that return, petitioners claimed on Schedule D, Capital Gains and Losses and Reconciliation of Forms 1099-B, long-term capital loss carryovers from 1985 and 1986 from partnerships, S corporations, and fiduciaries in the amount of $175,107.81. Petitioners provided no substantiation to support these claimed losses. During 1987, petitioners had a number of other transactions, which were not reported on Schedule D, including: $1,889 received from the sale of petitioners' shares in the Neuberger & Berman Government Money Fund; $1,889 received from the sale of petitioners' shares in the Guardian Mutual Fund; $1,780 received from the sale of petitioners' shares in the Manhattan Fund, Inc.; and $2,864 from the sale of petitioners' shares in the USAA Cornerstone Fund.

In addition to transactions not reported on Schedule D of petitioners' 1987 return, petitioners failed to report:  Rental income of $1,608 received from Solon Automated Services; an IRA distribution of $1,830 received from Putnam Option Income Trust; and interest income totaling $1,711 from various partnerships and banks.  Finally, during 1987, Ms. Bach contributed $4,000 to her IRA held by Putnam Option Income Trust.

Petitioners filed their 1987 Federal income tax return with the Internal Revenue Service Center at Philadelphia, Pennsylvania, on November 21, 1988.

## OPINION

### Recognition of Gain or Loss on Disposition of Partnership Interests

Respondent determined a deficiency for 1987 due to capital gains not reported by petitioners on the disposition of several partnership interests as follows:

| Partnership | Capital Gain |
| --- | --- |
| America/Bradley | $448,756 |
| JAMA | 213,535 |
| Bay Country | 189,802 |
| Diamond Farms | 66,823 |
| Wazee Street | 39,432 |
| Glenwood | 4,208 |
| Russell Street | 21,005 |
| Total | $983,561 |

Respondent argues that gain should be recognized in the amount of liabilities petitioners were relieved of when Mr. Bach disposed of his interests in the partnerships.[6] These amounts correspond to the deficit balances in Mr. Bach's capital accounts in the partnerships before the disposition of each partnership interest. At trial and on brief, petitioners did not contest the propriety of respondent's determination that those amounts should be considered proceeds from the dispositions of Mr. Bach's partnership interests for purposes of determining his capital gains.

Petitioners argue that certain transactions involving ISI and the partnerships should be factored into our overall determination of their 1987 tax liability.

Petitioners argue that they are entitled to "set off" gains determined by respondent by bad debt deductions which were not

---

[6]Sec. 741 provides:  "In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner.  Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset".  Sec. 752(d) provides:  "In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships."  See also Commissioner v. Tufts, 461 U.S. 300 (1983); Crane v. Commissioner, 331 U.S. 1 (1947).  Sec. 752(b) provides:  "Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership."

claimed on their return.[7]  Petitioners contend that various debts of the partnerships arose when loans were made by petitioners to ISI which, in turn, made loans to each of the various partnerships in which both ISI and Mr. Bach held interests. Further, petitioners contend that the loans receivable from the partnerships recorded on ISI's books would be reduced at the end of the year and a corresponding increase in salary or officer's compensation expense would be made on the books which represented payment to Mr. Bach by the same amount.  Petitioners also contend that each of the alleged payments made to them was recorded as income on their income tax return for each year.  Petitioners ultimately contend that through this process, they were in essence making the loans to the various partnerships and that these loans were never paid back nor credited to petitioners' capital accounts.

Mr. Bach testified that no written loan agreements ever existed between ISI and any partnership or between petitioners and any of the partnerships.  On brief, petitioners attached documents which purport to summarize loans totaling $1,042,809.42

---

[7]Sec. 166(a) provides that there shall be allowed as a deduction any debt which becomes worthless during the taxable year.  Petitioners bear the burden to establish:  (1) The existence of a bona fide debt; (2) the amount of the debt; (3) that the debt was incurred in or was created or acquired in connection with Mr. Bach's trade or business; and (4) that the debt became worthless at least in part during the taxable year. Sec. 166(a), (d)(2); Rule 142(a); secs. 1.166-1(a), (c), 1.166-5(b), Income Tax Regs.

from ISI to the various partnerships. These documents were not admitted as evidence. However, even if we were to accept these documents as proof of partnership debts to ISI, petitioners have not offered any documentation which would confirm that ISI owed petitioners a similar amount. In an attempt to prove that such a debt existed, petitioners offered ISI's general ledger as of December 31, 1986, which reflects that payments were made from ISI to petitioners and from petitioners to ISI. However, as of the end of 1986, the general ledger shows total officer loans payable of $12,070.15.[8] Such a small debt to petitioners during 1986 does not support their claims that there was in excess of $1 million in loans that became worthless in 1987.

With regard to the $1,042,809.42 allegedly lent by petitioners to the various partnerships via ISI, we find that petitioners have not met their burden of proving that a bona fide debt existed. The only evidence in support of petitioners' argument is Mr. Bach's own self-serving testimony. No notes were executed, no due date or interest rate was established, and no security was offered or taken. Therefore, we deny all of

---

[8]The "Officer Loan Payable" account shows a number of "loans" from Mr. Bach to ISI and shows payments either to Mr. Bach or to other vendors on behalf of Mr. Bach. The beginning balance of the Officer Loan Payable account is zero, and the balance at the end of the year is $12,070.15. We also note that many of the cash payments, which reduce ISI's payable to Mr. Bach during 1986, were listed as payments for, among other things, country club dues, a yacht, petitioners' Jaguar automobile, and the automobiles of petitioners' daughters.

petitioners' claimed bad debt deductions. See <u>Williams v. Commissioner</u>, T.C. Memo. 1994-560.

It is not clear whether petitioners are also making an argument that money advanced to the partnerships by ISI should be viewed as increasing Mr. Bach's basis in the partnerships for purposes of determining the amount of gain. Any such argument must be rejected for the same reason we reject petitioners' argument that they are entitled to an offsetting loss.

<u>Early Distribution From Petitioners' IRA During 1987</u>

Petitioners concede they received an IRA distribution in the amount of $1,830 from Putnam Option Income Trust during 1987. Amounts paid or distributed out of an IRA must be included in gross income "in the manner provided under section 72." Sec. 408(d)(1). A 10-percent tax on "early distributions" generally applies where a taxpayer receives a distribution from a qualified retirement plan which is includable in his gross income. Sec. 72(t)(1). Although section 72(t)(2) sets forth certain exceptions to the 10-percent tax on early distributions, petitioners have presented no evidence to suggest they fit within any of these exceptions. Therefore, we find that petitioners are liable for the 10-percent additional tax under section 72(t). See <u>Chiu v. Commissioner</u>, T.C. Memo. 1997-199.

<u>Excess Contributions to Petitioners' IRA During 1987</u>

Petitioner Barbara Bach made contributions totaling $4,000 to her IRA during 1987. Under section 4973(a), a 6-percent tax is imposed on excess contributions to an IRA. An excess contribution is defined as an amount contributed to an IRA less any qualified rollovers and less the amount allowable as a deduction under section 219. Sec. 4973(b)(1). Section 219(b) allows a maximum deduction of $2,000 for a contribution to Ms. Bach's IRA. Because Ms. Bach made an excess contribution of $2,000 to her IRA, none of which constituted a qualified rollover, she is subject to this tax.

## Addition to Tax for Failure To File a Timely Return

Respondent determined that petitioners are liable for an addition to tax under section 6651(a)(1). Petitioners filed their 1987 Federal income tax return on November 21, 1988. Petitioners bear the burden of proof on this issue. Abramo v. Commissioner, 78 T.C. 154, 163 (1982). Petitioners did not address this issue on brief, nor is there any evidence in the record that would lead us to conclude that they had a reasonable excuse for not filing their 1987 return until November 21, 1988. See sec. 6651(a)(1). Thus, we sustain respondent's determination.

## Additions to Tax for Negligence

Respondent also determined that petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B). This Court has defined negligence as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent made numerous adjustments to petitioners' income and deductions for 1987. Petitioners have not presented any evidence either at trial or on brief to convince us that their omissions from gross income and excess deductions were not the result of negligence. Therefore, we sustain respondent's determination.

Additions to Tax for Substantial Understatement of Income Tax

The final issue for decision is whether petitioners are liable for additions to tax under section 6661. Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). However, the amount of the understatement may be reduced under section 6661(b)(2)(B) for amounts adequately disclosed or supported by substantial authority. Petitioners have not addressed this issue on brief,

nor have they presented any evidence that would bring them within the safe harbor provisions of section 6661(b)(2)(B). Accordingly, we sustain respondent's determination.

<u>Decision will be entered under Rule 155</u>.