GORDON R. KARTRUDE, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kartrude v. Commissioner
Docket No. 4168-86.
United States Tax Court
T.C. Memo 1988-498; 1988 Tax Ct. Memo LEXIS 524; 56 T.C.M. (CCH) 500; T.C.M. (RIA) 88498; October 17, 1988. Gordon R. Kartrude, Jr., pro se. William B. McCarthy *527 and David R. Smith, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELL, Judge: Respondent determined the following deficiencies and additions to tax: Year
Deficiency
6651(a)(1)
1978
$ 1,756
$    59.90
1980
8,818
1,521,75
1982
8,776
1,100.25
Additions to Tax Under Sections [1]
Year
6653(a)
6653(a)(1)
6653(a)(2)
6654(a)
6661(a)
1978
$  87.80
--
--
$ -0- $ -0- 1980
440.90
--
--
345.02
-0- 1982
--
$ 438.80
*
321.93
877.60
The instant case presents the following issues: (1) whether petitioner's stunt flying activity was engaged in for profit within the meaning of section 183 (2) whether petitioner's tax liability may be computed using joint return rates, (3) whether petitioner is liable for additions to tax under *528 section 6651(a)(1), (4) whether petitioner is liable for additions to tax under section 6653(a), (5) whether petitioner is liable for additions to tax under section 6654(a), and (6) whether petitioner is liable for addition to tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts is incorporated herein by this reference. Petitioner resided at Plantation, Florida, when he filed his petition. In 1974, petitioner purchased 50 percent of the stock of Sport Aircraft, Inc. ("Sport"), a corporation which held title to a stunt plane called the "Pitt Special." Petitioner paid $ 26,000 for the stock of Sport. Since 1974 petitioner's wife has owned the remaining 50 percent of the stock of Sport. During the taxable years in issue, Sport was a subchapter S corporation. In 1976, petitioner was laid off by Pan Am, where he had worked as a flight engineer. During part of 1978, petitioner worked as a flight instructor at Burnside OTT Aviation Training. In that year, petitioner also began using the stunt plane to generate revenue by performing stunts at air shows and providing "aerobatic instruction." He promoted *529 his services by moving the stunt plane to a hanger, posting a sign on the hanger, placing ads in newspapers, and traveling to air shows, where he handed out leaflets and cards. in 1978, Sport received revenues of $ 5,437.56 and incurred expenses in the amount of $ 10,689.24, including $ 536.09 for "Business Expenses and Advertisement." In 1979, Sport received a fee of approximately $ 11,000 when petitioner worked on a movie called "The Pilot," starring, among others, Cliff Robertson. Petitioner performed stunts for the movie and role after the author of the book upon which the movie was based saw petitioner and his "partner" flying in an air show. Later, in 1979 or early 1980 petitioner's partner went to Jordan to join its team of show pilots. The departure of petitioner's partner greatly damaged petitioner's prospects for performing at future air shows because petitioner and his partner had been flying a "dual formation air show." Petitioner had also flown in three man formations with his partner and another pilot, Jim Holland. After his partner's departure for Jordan, petitioner concluded that "if I was going to eat, I'd better find another job." During most, if not all, of *530 1980, petitioner worked at Burnside OTT Aviation Training as a flight instructor. In 1980, Sport's revenues declined to $ 1,061, while expenses for that year totaled $ 7,907.79. Only $ 42 was spent on "Business Expenses and Advertisement." In 1982, Pan Am rehired petitioner on a full-time basis as a ground school instructor. In that year, Sport produced no revenue and had expenses of $ 6,849.32. No money was expended for fuel or advertising during 1982. Sport's expenditures for parts and maintenance, like its expenditures for advertising, declined between 1978 and 1982. In 1978, Sport spent $ 996.23 on upkeep, while in 1980 and 1982, such expenditures totaled $ 118 and $ 60, respectively. Sport eventually sold the stunt plane as scrap. During the taxable years in issue, petitioner maintained a separate checking account for the stunt flying activity, but some of Sport's costs were paid with funds from petitioner's personal account. The stunt plane's flight logs also comprised part of the activity's record. The record contains no evidence that petitioner's wife managed, conducted, or otherwise participated in the activity. Petitioner's only other business venture had involved *531 an unsuccessful attempt at car sales. Petitioner did not file Form 1040 tax returns for any of the taxable years in issue. He did, however, file such returns for the intervening taxable years, i.e., 1979, 1981. OPINION
Section 183
Petitioner claims entitlement to his pro rata share of Sports' losses for the taxable years in issue. He argues that the losses are fully deductible because Sport engaged in the stunt flying activity with the requisite profit objective. Respondent contends that the activity was "not engaged in for profit." Section 183(a) supplies the general rule which disallows all deductions attributable to activities "not engaged in for profit." Section 183(b)(1) then allows those deductions otherwise allowable regardless of profit objective, e.g., interest, State and local taxes. [2] In addition, section 183(b)(2) allows those deductions which would have been allowable had the activity been engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b)(1). *532 Section 183(c) defines an activity which is "not engaged in for profit" as, "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) and (2) of section 212." Thus, section 183 does not apply if petitioner's stunt flying activity gives rise to deductions under section 162 or under section 212(1) or (2). Deductions are permitted under those sections if an activity is commenced and continued with the "actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 72 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner,72 T.C. 659, 66 (1979); Golanty v. Commissioner,72 T.C. 411, 426-427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Brannen v. Commissioner,78 T.C. 471, 501 (1982), affd. 722 F.2d 695 (11th Cir. 1984). A "reasonable" expectation of profit, however, need not be shown. Sec. 1.183-2(a), Income Tax Regs.; *533 Dreicer v. Commissioner, supra at 644-645. Although the analysis under section 183 is applied at the corporate level, section 1.183-1(f), Income Tax Regs., because petitioner alone managed and conducted Sport's activity and because the owner of the other 50 percent of Sport's stock was petitioner's wife, we shall examine petitioner's intent and attribute that intent to Sport. See Eppler v. Commissioner,58 T.C. 691, 696-699 (1972), affd. without published opinion 486 F.2d 1406 (7th Cir. 1973); Butler v. Commissioner,36 T.C. 1097 (1961). [3]
Whether petitioner had the requisition intent is an issue of fact to be resolved on the basis of all surrounding circumstances. Sec. 1.183-2(b), Income Tax Regs., Dreicer v. Commissioner, supra at 645. In making our determination, we give greater weight to objective factors than to petitioner's statements of intent. Sec. 1.183-2(a), Income Tax Regs.; *534 Dreicer v. Commissioner, supra at 645. Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). With the aforementioned precepts in mind, we find that petitioner possessed the requisite profit objective in taxable year 1978 but that he lost that objective prior to taxable year 1980. The analysis through which we reach the foregoing conclusion begins with section 1.183-2(b), Income Tax Regs., which contains a nonexclusive list of nine factors derived from case law to be considered in determining whether an activity is engaged in for profit. Allen v. Commissioner,72 T.C. 28, 33 (1979); Benz v. Commissioner,63 T.C. 375, 382-383 (1974). The factors are: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) *535 the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is determinative, and all facts and circumstances, including factors not listed, are to be considered. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner,86 T.C. 360, 371 91986). We first consider taxable year 1978. The manner in which petitioner conducted the stunt flying activity that year evidences a profit objective. Petitioner actively sought to promote business. His efforts included newspaper advertising and personal solicitation. Notably, petitioner spent $ 536.09 in 1978 for "Business Expense & Advertisement." The regulations cite complete and accurate record keeping as indicative of profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. The existence of stipulated operating results for Sport for each of the taxable years in issue indicates that petitioner kept some record of revenues and expenditures. We note that the stipulation itemizes activity costs into specific categories, including "Maintenance," "Parts," and "Fuel." Further, petitioner maintained *536 a separate checking account and a flight log for the activity. We believe that some activity expenses were paid with funds from petitioner's personal checking account because of the activity's failure to generate a positive cash flow. We therefore decline to construe that fact as pointing to petitioner's lack of profit objective. The regulations also state that "abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive." Sec. 1.183-2(b)(1), Income Tax Regs. As will be shown, petitioner abandoned the activity prior to 1980. That fact, however, does not prove his lack of profit objective in 1978. To the contrary, the fact that petitioner abandoned the activity and commenced full-time employment suggests that the activity had been profit-oriented and that it was abandoned because it failed to produce a profit. We do not believe that a taxpayer would abandon a hobby or recreational activity solely because it failed to produce a profit. Although petitioner may have lacked business acumen, he had the expertise necessary to fly stunts and teach others to perform them. Petitioner served in the Air Force as *537 a pilot and has been employed as a flight instructor. Time and effort expended on an activity are indicative of profit objective. Sec. 1.183-2(b)(3), Income Tax Regs. Sport generated $ 5,437.56 of revenue in 1978. Petitioner testified that Sport received revenues of $ 50 per hour from petitioner's flight instruction that year. Petitioner further testified that Sport received revenues of between $ 300 and $ 500 per day from petitioner's performance at air shows. Thus, petitioner probably spent some 90 hours instructing in 1978, and performed in "some air shows," as well. Given the dangerous nature of the activity, we cannot say that petitioner devoted an insignificant amount of time and effort to the activity in 1978. Also, 1978 was the first year of the activity, which we believe accounts for the level of activity in that year. Sport suffered losses in all of the taxable years in issue. The record also disclosed, however, that Sport earned approximately $ 11,000 when petitioner worked on a movie in 1979. Because Sport's annual expenses for the three taxable years in issue averaged $ 8,482.12 and never exceeded $ 10,689.24, we find it highly probable that Sport had a profitable *538 year in 1979. Even if Sport was not profitable in that year, a series of losses during the early years of a business does not necessarily indicate lack of profit objective. Sec. 1.183-2(b)(6), Income Tax Regs.
Turning next to the regulations which state, "the fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit," sec. 1.183-2(b)(8), Income Tax Regs., we note that petitioner lost his job in 1976. He also earned wages of only $ 10,004 in 1978, as well as less than $ 500 of investment income. Petitioner did not earn substantial income that year, especially in view of his obligation to support a wife and two children. We reject respondent's contention that petitioner incurred $ 10,689.24 of costs in 1978 in pursuit of a "hobby." Rather, we find that petitioner incurred those expenses hoping to develop a source of profits that would supplement his low income. Although the presence of personal or recreational elements may indicate a lack of profit objective, sec. 1.183-2(b)(9), Income Tax Regs., suffering is not a "prerequisite to deductibility." *539 Jackson v. Commissioner,59 T.C. 312, 317 (1972). We suspect that petitioner enjoyed flying his stunt plane. It does not necessarily follow that he derived a similar pleasure from teaching others to perform stunts. Nevertheless, "the fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit." Sec. 1.183-2(b)(9), Income Tax Reg.
Respondent cites Rand v. Commissioner,34 T.C. 1145 (1960), for the proposition that petitioner's stunt flying activity was a hobby because the stunt plane was available for petitioner's personal use. We note, however, that Rand turned on "all circumstances," as does the instant case. Also, the taxpayer in Rand attempted to charter his yacht in Florida for a few weeks each winter, keeping the yacht for pleasure at his home in Connecticut during the remainder of the year. In the instant case, petitioner did not limit his stunt flying and teaching activities to a particular segment of the year. Based on the record as a whole and particularly petitioner's advertising activity, the sizeable income generated by *540 the activity in 1979, and petitioner's low employment earnings for 1978, we find that petitioner, and therefore Sport, possessed the requisite profit objective in taxable year 1978. We now direct our attention to taxable years 1980 and 1982. Throughout petitioner's testimony, he noted the devastating effect of his partner's departure for Jordan. Petitioner testified: "Our outfit kind of fell apart. * * * It failed, and I had the opportunity to go back into employment, and I had to let the business go." Thus, when petitioner's partner left for Jordan, petitioner's profit objective likewise departed. The record does not clearly reflect whether petitioner's partner left in 1979 or early 1980. He could not have left before 1979, because in that year petitioner and his partner gave a demonstration ride to the author of the book upon which the movie "The Pilot" was based. Although we recognize that petitioner may have possessed a profit objective for some part of 1980, petitioner bears the burden of proof. Rule 142(a). Welch v. Helvering, supra.We therefore find that petitioner has failed to prove that he maintained the requisite objective during taxable year *541 1980. Further, petitioner admitted that it was impossible for him to devote less than full-time work to the stunt flying activity and still make a profit. The record discloses that petitioner was employed with others on essentially a full-time basis both in 1980 and 1982 and was thus unable to devote full time to the activity in those years. The abandonment of the activity and the loss of profit objective is also evidenced by the very small sums spent in 1980 and 1982 on advertising ($ 42 and $ 0, respectively) and on upkeep ($ 118 and $ 60, respectively). In sum, we find that petitioner possessed the requisite profit objective in taxable year 1978. We therefore hold that section 183 does not limit petitioner's deduction of his pro rata share of Sport's loss for that year. We also find, however that petitioner lost his profit objective prior to 1980. Consequently, section 183 limits petitioner's ability to deduct his pro rata share of Sport's losses for taxable years 1980 and 1982.
Joint Return Rates
Petitioner's contends that his tax liability for each of the taxable years in issue should be computed on the basis of joint return rates. Respondent contends that joint *542 return rates are inapplicable because petitioner has failed to file returns for the taxable years in issue. We reject petitioner's contention for two reasons. First, the joint return rates set forth in section 1(a) are used to compute the tax of "every married individual * * * who makes a single return jointly with his spouse under section 6013." Petitioner and his wife have not made a "single return jointly" for any of the taxable years in issue. Petitioner filed no returns, joint or separate, for those years. Thus, by its terms, section 1(a) is inapplicable. Phillips v. Commissoner,86 T.C. 433, 441 n. 7 (1986), affd. 851 F.2d 1492 (D. C. Cir. 1988); Thompson v. Commissioner,78 T.C. 558, 561 (1982). [4]
Second, even if we treat petitioner's contention on brief as an election to have joint return rates apply, and disregard, in effect, petitioner's failure to file returns, we still face the fact that petitioner's wife is not a party to the instant case and therefore has not manifested in this proceeding her assent to a joint return. Section 6013 *543 states, "a husband and wife may make a single return jointly." (Emphasis supplied.) Because the section 6013 election requires the assent of both spouses and we have no evidence that petitioner's wife has manifested such assent, joint return rates are inapplicable.
Section 6651(a)(1) Addition
Section 6651(a)(1) imposes an addition to tax for failure to timely file a return. A taxpayer may avoid the addition by showing "that such failure is due to reasonable cause and not due to wilful neglect." Petitioner bears the burden of proving that the addition is now warranted. Foy v. Commissioner,84 T.C. 50, 75 (1985); Abramo v. Commissioner,78 T.C. 154, 163 (1982); Rule 142(a). In the instant case, petitioner claims that the filing of W-2 forms by his employers relieved him of his obligation to file returns for the taxable years in issue. We reject this argument. Section 6011 states, "When required by regulations prescribed by the Secretary any person liable for any tax * * * shall make a return or statement according to the forms and regulations prescribed by the Secretary." (Emphasis supplied.) *544 Section 1.6011-1(b), Income Tax Regs., states in pertinent part, In the absence of a prescribed form, a statement made by a taxpayer disclosing his gross income and the deductions therefrom may be accepted as a tentative return, and, if filed within the prescribed time, the statements so made will relieve the taxpayer from liability for the addition to tax imposed for the delinquent filing of the return, provided that without unnecessary delay such a tentative return is supplemented by a return made on the proper form. (Emphasis supplied.)
Thus, a substitute for a prescribed form must be followed by the prescribed form. In the instant case, petitioner never made use of a substitute or prescribed form. In support of his contention that he should not be liable for the failure to file addition to tax, petitioner quotes language from uncited portions of the Federal Register dated September 11, 1946. The quoted provision does not support petitioner's contention. Furthermore, we find that petitioner did not encounter the provision until well after the filing deadlines for the taxable years in issue. Thus, the provision is not proof that petitioner's failure to file was based *545 upon a good faith albeit mistaken view of the law. Further, petitioner filed proper returns for taxable years 1979 and 1981. The fact casts further doubt on whether petitioner truly believed that he was under no duty to file returns for the taxable years in issue. Petitioner has not met his burden of proving that the additions under section 6651(a)(1) are not warranted. We therefore hold that petitioner is liable for the additions for the taxable years in issue.
Section 6653(a) Addition
Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that the addition is not warranted. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Rule 142(a). We find that petitioner's failure to file returns for the taxable years in issue constitutes failure to use "due care" and justifies imposition of the addition for each of the taxable years in issue. Thompson v. Commissioner, supra at 563-564; Neely v. Commissioner,85 T.C. 934, 947 (1985). [5]
*546 Section 6654(a) Addition
Section 6654(a) imposes an addition to tax for failure to pay estimated tax. Respondent has determined additions to tax under that section for petitioner's taxable years 1980 and 1982. In very general terms, the addition applies of a taxpayer fails to make quarterly payments totaling 80 percent of the tax shown on his or her return (or 80 percent of his or her correct tax liability if no return has been filed). A taxpayer is deemed to have paid withheld taxes in equal installments. Sec. 6654(e). The addition to tax is mandatory if the required payments have not been made. It cannot be avoided by showing "reasonable cause." Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). We cannot state whether or not petitioner is liable for the addition for taxable years 1980 or 1982. Respondent has conceded deductions against gross income for each of those years. Further, we point out that petitioner may deduct his pro rata share of Sport's interest expense for each of those years, despite the fact that the stunt flying activity was no longer engaged in for profit in those years. Sec. 183(b)(1). Thus, taxes withheld from petitioner's *547 earnings in taxable years 1980 and 1982 may well total a sufficient percentage of petitioner's correct tax for each of those years. If, however, the Rule 155 proceeding which we will direct proves otherwise, respondent may assess additions under Section 6654(a).
Section 6661(a) Addition
Section 6661(a) imposes an addition to tax if a taxpayer understates his or her liability by the greater of 10 percent of the correct tax or $ 5,000. Respondent has determined an addition under section 6661(a) for petitioner's 1982 taxable year. Again, we can neither uphold or set aside respondent's determination. As noted, respondent has conceded deductions for the taxable years in issue. Although respondent initially determined a deficiency of $ 8,776 for taxable year 1982, petitioner's correct tax for that year may not exceed $ 5,000, in which case, there has been no "substantial understatement." We further note that if a substantial understatement remains after respondent has recalculated petitioner's liability, the addition under section 6661(a) would apply only to the "underpayment" for that year. In *548 Woods v. Commissioner,91 T.C. 88 (1988), we held that the amount of the underpayment referred to in section 6661(a) takes into account withheld taxes. Thus, respondent must give credit for taxes withheld by petitioner's employers when computing and addition under section 6661(a). [6]
In sum, if the Rule 155 proceeding reveals a "substantial understatement" for taxable year 1982, then respondent may assess the addition to tax under section 6661(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. Plus 50 percent of the interest due on an underpayment of $ 4,401. ↩
2. Respondent has conceded that Sport had interest expense in each of the years in issue. For the years in issue such expense is fully deductible by virtue of sections 163(a) and 183(b)(1) regardless of whether the activity was engaged in for profit. ↩
3. See also Synnestvedt v. Commissioner,T.C. Memo. 1987-31; Blake v. Commissioner,T.C. Memo. 1981-579↩. 4. Accord Schroeder v. Commissioner,T.C. Memo. 1986-583↩. 5. Taxpayers are required to take reasonable steps to determine the law and comply with it. Adams v. Commissioner,T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (2d Cir. 1984); Smith v. Commissioner,T.C. Memo. 1982-140, affd. without published opinion 698 F.2d 1215↩ (5th Cir. 1983).
6. We make this admonition because respondent's notice of deficiency determined that the addition applied to the entire understatement. ↩