JOHN T. SYNNESTVEDT AND MARION DAY SYNNESTVEDT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Synnestvedt v. Commissioner
Docket No. 34794-83.
United States Tax Court
T.C. Memo 1987-31; 1987 Tax Ct. Memo LEXIS 31; 52 T.C.M. (CCH) 1402; T.C.M. (RIA) 87031; January 14, 1987. *31 Petitioners paid for their son's motocross racing expenses through their wholly owned small business corporation. There was no written contract of employment executed by the son and the corporation, and no evidence was presented to substantiate the payment of any salary to the son. Petitioners' son competed in motocross races at the amateur professional, or semi-pro, level only and did not finish many of the races that he entered. The corporation permitted the son to keep the small amount of prize money he earned, and petitioner did not report such amounts on the corporation's income tax returns. Held, respondent has properly determined that petitioners' sponsorship of their son's motocross racing activities constitutes an activity "not engaged in for profit" within the meaning of section 183, I.R.C. 1954. Stephen E. Sokolic and John E. Kaskey, for the petitioners. James P. Clancy, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: Respondent has determined, by notice of deficiency dated September 16, 1983, a deficiency in petitioners' Federal income tax for the taxable year ended December 31, 1980, in the amount of $22,397, and by amended answer filed November 23, 1984, an increased deficiency, in the amount of $49,064. After concessions, the primary issue remaining for decision is whether petitioners' sponsorship of their son's motocross racing, through their wholly owned corporation, constitutes an activity "not engaged in for profit" within the meaning of section 183[1]. *34 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and exhibits attached thereto are incorporated herein by this reference. Petitioners John T. Synnestvedt (John) and Marion Day Synnestvedt (Marion), husband and wife, resided in Huntingdon Valley, Pennsylvania at the time they filed their petition in this case. Petitioners filed their joint Federal income tax return for the 1980 taxable year with the Internal Revenue Service Office in Philadelphia, Pennsylvania. During the taxable year in issue and at all relevant times, John was an attorney in the law firm of Synnestvedt & Lechner, and Marion was a housewife. For the taxable year in issue, John's distributive share of partnership income from his law practice was over $150,000. On March 15, 1972, petitioners formed Synday Corporation (Synday or the corporation), and in 1973 they elected Subchapter S, small business corporation, status. At all times, petitioners owned 100 percent of the corporation's capital stock. The cash assets of the corporation consist entirely of capital contributions made by John. Synday remained an inactive corporation until 1978. On its Federal income *35 tax returns, Synday's stated principal business activity was to sponsor professional sports, specifically, racing. As of the date of trial, the only racer the corporation purported to sponsor was petitioners' son, Edwin Synnestvedt (Edwin), as a motocross racer. Motocross racing competitions are conducted at the amateur and professional levels. Within the amateur level of competition, a racer may advance from the lower "B" level to the higher "A" level by accumulating "points" earned based upon the racer's placement at the end of each racing event, also known as a "moto." A racer may advance to the professional level after 2 years of amateur competitions and must be at least 16 years old to obtain a professional motocross license. A license may be obtained at the professional level either as an expert professional or as a novice professional, also referred to as the "semi-pro" class. Races at the novice professional level include district, regional, national and series competitions. Winners of these races are awarded comparatively small amounts of prize money, for example, $50 to $100 for first place per moto. Novice professional races are not sanctioned by the American Motocross *36 Association, the governing body of motocross racing, which also ranks professional motocross racers. A racer may advance from a novice professional to an expert professional level based upon the accumulation of placement points. The goal of a professional motocross rider is to become sponsored by a factory team, for example, by the Honda, Kawasaki, Suzuki, or Yamaha motocross teams. The top-ranked members of a factory sponsored team have the potential to earn thousands of dollars from motocross racing through a combination of salary, contingency payments and product endorsements. Edwin began motocross racing in 1972 at the age of 10. In 1977, he attended the Suzuki School of Motocross, a 3-day school for motocross racing, where his performance was praised by the head of the school.In 1978, he obtained a novice professional motocross license and dropped out of high school to pursue racing full-time. In 1979 and 1980, Edwin participated in the Kawasaki Competition Assistance Program, sponsored by Kawasaki Motors Corp., U.S.A. through a local distributorship, which essentially entitled him to discounts on purchases of motocross bikes and their parts. From 1978 through 1980, Edwin *37 participated in several motocross race competitions. He raced on a total of approximately 20 days for the 1979-1980 period, often on Saturdays and Sundays. All of the races were conducted at the novice professional level, as he did not have enough points to qualify to race at the expert professional level. He did not finish many of these races that he entered due to breakdowns of his motocross bikes. Petitioners attended many of Edwin's races. They stayed at the race sites in their motor home from Friday evenings until Sunday evenings when Edwin raced during a weekend. John discussed Edwin's selection of races, offered him strategy and assisted him in the racing pit. Marion shopped for and prepared Edwin's meals and cleaned his racing uniforms and motocross bikes. John paid for Edwin's racing expenses either in cash or by charges to his own personal credit cards. He kept receipts for these expenses and entered the amounts into a diary maintained on behalf of the corporation. At the close of its fiscal year, the corporation issued a series of reimbursement checks to John for the expenses. There was no written contract of employment with respect to the corporation's sponsorship *38 of Edwin's racing activities. Petitioners were not paid any salary by the corporation, and there is no substantiation of any salary payments to Edwin. The corporation permitted Edwin to keep the small amount of prize money he was awarded, approximately $1,000 to $2,000 in 1979 and 1980, which amounts were not reported in income on the corporation's tax returns. Edwin stopped racing in 1984, after he had "been through enough crashes." He never earned the requisite amount of points to compete on the expert professional level. As of the date of trial, he rode motocross bikes for leisure only. The corporation realized net losses in each year of its sponsorship of Edwin's racing activities. For its fiscal years ended January 31, 1978 and January 31, 1979, the corporation reported net losses in the amounts of $35,165 and $59,251 on its Federal income tax returns, [2] which amounts petitioners deducted on their 1979 and 1980 Federal income tax returns, respectively. In his amended *39 answer, [3] respondent disallowed petitioners' deduction of losses reported by their wholly owned corporation, reported on petitioners' 1980 tax return, based upon the determination that the deductions and expenses of the corporation were not paid or incurred in furtherance of an activity engaged in for profit or in carrying on a trade or business. ULTIMATE FINDING OF FACT Petitioners' sponsorship of their son's motocross racing constitutes an activity not engaged in for profit. OPINION The primary issue for decision is whether respondent has determined properly that the sponsorship of petitioners' son's motocross racing, by petitioners' wholly owned corporation, was an activity "not engaged in for profit" within the meaning of section 183. Petitioners argue that the activities of the corporation were carried on with the objective of realizing a profit. Respondent argues that petitioners' primary purposes for supporting their son's racing activities were to ensure his happiness, to secure an avocation for him, and to reap possible tax benefits without a serious profit motive. [4] Respondent *40 bears the burden of proof on this issue, which was raised in the amended answer. Rule 142(a); Reiff v. Commissioner,77 T.C. 1169, 1173 (1981). Section 183(a) provides the general rule that, in the case of an activity not engaged in for profit, no deduction attributable to such activity shall be allowed except as provided in section 183(b). Section 183(b)(1) provides that there shall be allowed those deductions that would be allowable without regard to whether the activity is engaged in for profit. See sec. 1.183-1(b), Income Tax Regs.Section 183(b)(2) provides that deductions, that would be allowable if the activity were engaged in for profit, shall be allowed only to the extent that the gross income derived from the activity exceeds the deductions allowable under section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as follows: Activity Not *41 Engaged in for Profit Defined. -- For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Section 162(a) [5] allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The test for determining whether a taxpayer is carrying on a trade or business under section 162 is whether the taxpayer is engaged in the activity with the primary purpose and intention of making a profit. Engdahl v. Commissioner,72 T.C. 659, 665-666 (1979); Allen v. Commissioner,72 T.C. 28, 32 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. on another issue 607 F.2d 995 (2d Cir. 1979). *42 The question of whether petitioners, through the corporation, entered into and continued to engage in the sponsorship of Edwin's racing activities with the intention of making a profit is a question of fact. [6]Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Petitioners' expectation of making a profit need not have been reasonable so long as they had a bona fide objective to realize a profit. Sec. 1.183-2(a), Income Tax Regs.; Gefen v. Commissioner, 87 T.C.     (Dec. 30, 1986) (slip op. at 39); Golanty v. Commissioner,72 T.C. at 425-426. It must be determined whether petitioners possessed an "actual and honest profit objective." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Greater weight is given to objective facts rather than to petitioners' statements of their intent. Sec. 1.183-2(a) and (b), Income Tax Regs.; Dreicer v. Commissioner,78 T.C. at 645. *43 The regulations promulgated under section 183 list the following nine factors that normally should be considered in the determination of whether an activity is engaged in for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; (9) elements of personal pleasure or recreation involved in the activity. Section 1.183-2(b), Income Tax Regs. These are not the exclusive factors to be taken into account, and all of the facts and circumstances surrounding the activity are to be considered. Section 1.183-2(a) and (b), Income Tax Regs.; Allen v. Commissioner,72 T.C. at 34; Dunn v. Commissioner,70 T.C. at 720. Respondent argues, first, that the corporation *44 has not conducted its sponsorship of Edwin's motocross racing activities in a businesslike manner, in accordance with section 1.183-2(b)(1), Income Tax Regs.Respondent contends that the absence of any written or other formal contract of employment between Edwin and the corporation specifying the rights and obligations of the parties refutes petitioners' allegation of a profit motive. [7] Petitioners argue that an oral contract was entered into between Edwin and the corporation prior to its sponsorship of Edwin's racing activities, and disagree with respondent's contention that the terms of such contract were indefinite. *45 Petitioners have testified that the corporation agreed to sponsor Edwin's racing activities and pay him a salary both prior and subsequent to Edwin's obtaining a factory sponsorship, in exchange for the corporation's right to receive the full amount of any factory sponsor's salary payable to Edwin. [8] However, any right of the corporation to profit from Edwin's racing earnings would benefit petitioners only in the event that Edwin could obtain a factory sponsorship for his racing activities. In fact, petitioners permitted Edwin to keep the little prize money that he did earn in 1979 and 1980, which amounts were not reported in income by the corporation. Petitioners argue that the corporation has conducted its activities in a businesslike manner, as evidenced by their use of a separate corporate checking account. *46 Throughout the year, John paid for his son's racing expenses in cash or by charges to his personal credit cards. He kept his receipts and recorded the amounts of his expenditures into a diary maintained on behalf of the corporation. In the final days of the corporation's fiscal year, John was issued a series of reimbursement checks from the corporation, using cash that he had deposited into the corporation in the form of capital contributions. However, the fact that Edwin's racing expenses were paid for by petitioners through a separate corporate checking account is insufficient to establish a businesslike manner of operations and has no bearing upon whether petitioners held a bona fide profit objective. Also, although Edwin testified that he was paid a salary by the corporation, in the amount of $100 per week, petitioners have not presented any documentation such as payslips, cancelled checks, or other books or records of the corporation to substantiate any such payments. The regulations promulgated under section 183 also consider the expertise of the taxpayer or his or her advisors. Section 1.183-2(b)(2), Income Tax Regs. Respondent contends that petitioners did not investigate *47 the anticipated costs of their investment and its potential for profit. Petitioners have testified that John reviewed various trade journals and consulted with experts in the field prior to deciding whether to invest in this activity. Petitioners rely upon the statements by their expert witness, Eyvind Boyesen, a motocross racing champion, that John had consulted with him about the potential for profit from sponsoring a motocross racer. However, petitioners' expert witness also is a client of John's law practice and a long-time friend of the Synnestvedt family, and his testimony clearly is biased and can be given little, if any, weight. Another factor to be considered is the time and effort expended in carrying on the activity. Section 1.183-2(b)(3), Income Tax Regs. Although Edwin dropped out of high school in order to pursue motocross racing full-time, the analysis focuses upon the time and effort of the taxpayers, that is, of petitioners. John and Marion both have testified that they attended several of Edwin's races and assisted him at the race sites. However, the nature of the work performed by Marion, cooking and cleaning, is that of a devoted parent's care for his or *48 her child. Also, although John has testified that he decreased the time he devoted to his legal practice because of his investment in Edwin's racing, he also has testified that he billed approximately 2,000 hours of his time to his legal clients during the year in issue. Absent evidence of higher billing hours in years previous to the year in issue, petitioners have failed to establish that John withdrew from his legal practice in order to devote his time and energy to this activity. The regulations also look to the taxpayer's history of income or losses with respect to the activity and the amount of any occassional profits earned. Section 1.183-2(b)(6) and (7), Income Tax Regs.The corporation reported net losses in each year that it sponsored Edwin's racing activities, but petitioners argue that this fact should not be given much weight. They note that the taxable year in issue encompasses only their second year of this activity and only the second year in which Edwin was licensed as a novice professional racer. The regulations provide that losses during the initial stages of an activity may not necessarily indicate that an activity is not engaged in for profit. Section 1.183-2(b)(6), *49 Income Tax Regs.
However, the ultimate goal of the activity must be to realize a net profit so as to recoup losses previously sustained. Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).Even assuming that a top-ranked expert professional motocross racer could earn hundreds of thousands of dollars, as petitioners maintain, during the year in issue Edwin was racing at the novice professional level, and was earning only approximately $1,000 to $2,000 per year. Moreover, Edwin did not finish many of the races that he had entered. [9] Therefore, we conclude that as of the taxable year in issue, petitioners' expectation of any factory sponsorship of Edwin's racing was highly unrealistic.
The regulations also provide that substantial income from sources other than the activity in issue may indicate that the activity is not engaged in for profit, particularly where losses from the activity generate substantial tax benefits and there are elements of personal pleasure *50 or recreation involved. Section 1.183-2(b)(8) and (9), Income Tax Regs. In the years that petitioners purport to have sponsored their son's racing activities for profit they also enjoyed substantial income from John's legal practice. John has testified that he enjoyed watching motocross racing only before the time that Edwin began to race. Although we appreciate his mixed emotions with respect to his son's racing, we do not find credible his testimony that he did not also enjoy watching his son race. Also, Marion admitted that she could not deny the satisfaction she derived from watching her son race. We conclude that respondent has determined properly that petitioners' sponsorship of their son's racing activities, through their wholly owned corporation, was an activity "not engaged in for profit" within the meaning of section 183. In fact, this is not a difficult or close case. Accordingly, petitioners' deductions of expenses paid or incurred with respect to this activity are allowable only to the extent permitted under section 183(b). Decision will be entered under Rule 115.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The corporation reported net losses, in the amounts of $63,011 and $60,463, on its 1980 and 1981 returns, which amounts were deducted by petitioners on their 1981 and 1982 returns, respectively.↩
3. None of the issues raised in the statutory notice of deficiency remains in dispute.↩
4. Alternatively, respondent argues that some of the expenses and deductions claimed by the corporation constitute either nondeductible personal or start-up expenses. However, based upon our resolution of the main issue presented, we need not address either of these alternative arguments.↩
5. Respondent has disallowed the losses in issue based upon the determination that the expenses were not paid or incurred in the furtherance of an activity engaged in for profit, sec. 183↩, or in the carrying on of a trade or business, sec. 162, but has not made any argument with respect to section 212.
6. Although the analysis under section 183 is applied at the corporate level, sec. 1.183-1(f), Income Tax Regs., petitioners' intent is attributable to their wholly owned Subchapter S corporation. See Blake v. Commissioner,T.C. Memo. 1981-579↩.
7. In 1978, the year in which the corporation purports to have contracted to sponsor Edwin's racing activities, Edwin was only 16 years old. Respondent argues that, as a minor under Pennsylvania law, 1 Pa. Stat. Ann. sec. 1991↩ (Purdon 1985 Supp.), he could not have entered into any such legally binding contract. Petitioner argues that the contract was voidable but not void and that upon attaining majority Edwin did not disaffirm his contractual obligations to the corporation. In any event, we need not decide whether Edwin entered into a legally binding contract to resolve whether petitioners maintained a bona fide profit objective.
8. At trial, john testified that, [t]he terms of the contract were that any factory salary would be paid to the corporation. Sponsorships and contingency money would be paid to the corporation. This would enable us as the stockholders of the corporation to recoup our investment and make a handsome profit on it and Edwin would continue to be paid a modest salary.↩
9. Edwin testified that, in 1980, he had mechanical breakdowns in over 75 percent of his races using one particular manufacturer's motocross bikes.↩