T.C. Summary Opinion 2010-120

UNITED STATES TAX COURT

MICHAEL PAQUIN AND KATHY THOMAS-PAQUIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25886-08S.                    Filed August 19, 2010.

Michael Paquin and Kathy Thomas-Paquin, pro sese.

Wesley J. Wong, for respondent.


MARVEL, Judge:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, in effect for the relevant
period, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income taxes of $11,205[2] and $8,367 and accuracy-related penalties under section 6662(a) of $2,241 and $1,673 for 2005 and 2006, respectively. After concessions,[3] the issues for decision are: (1) Whether petitioners' motocross racing activity was an "activity not engaged in for profit" in 2005 and 2006 within the meaning of section 183, and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalties for 2005 and 2006.

## Background

Some of the facts have been stipulated. The stipulation of facts is incorporated herein by this reference. Petitioners Michael Paquin (Mr. Paquin) and Kathy Thomas-Paquin (Mrs. Thomas-Paquin) are married individuals who filed joint Federal income tax returns for 2005 and 2006. Petitioners resided in Nevada when they filed their petition.

---

[2]All monetary figures have been rounded to the nearest dollar.

[3]Respondent concedes that the expenses claimed on petitioners' 2005 and 2006 Schedules C, Profit or Loss From Business, were actually incurred and were related to petitioners' motocross racing activity. The remaining adjustments are computational in nature.

Mr. Paquin was employed full time in 2005 and 2006 as a project superintendent for Q&D Construction, and he worked, on average, more than 40 hours per week. Mrs. Thomas-Paquin was employed full time in 2005 and 2006 as an operations manager for United Rentals, and she worked 40 hours per week, with occasional overtime. Petitioners reported wage income of $173,782 and $178,261 for 2005 and 2006, respectively.

Mr. Paquin is an avid fan of motocross motorcycle racing. In 2004 Mr. Paquin became interested in starting a motocross racing business, and he discussed the idea with Mrs. Thomas-Paquin. Although neither petitioner had any experience in motocross racing or the business of motocross racing, petitioners agreed to give the idea a try. Petitioners did not intend to personally compete in motocross races but instead planned to sponsor other riders--including Mr. Paquin's son, MP.[4] Petitioners' decision to sponsor MP was not based on MP's skill at motocross racing or even his interest in the sport. Indeed, MP initially was reluctant to compete.

Mr. Paquin also identified more experienced riders, who were unrelated to petitioners, and invited them to join his racing team. Mr. Paquin did not hold formal tryouts or auditions.

---

[4]It is the policy of the Court not to identify minor children. Accordingly, we shall refer to Mr. Paquin's son as MP. See Rule 27(a)(3). MP is Mr. Paquin's son from a previous marriage.

Instead, he approached riders who performed well at motocross events he attended and who had, in his words, "the right attitude".

In addition to MP, petitioners sponsored two riders in 2005 and 2006:  Tony Merrell (Mr. Merrell) and Dee Wade (Mr. Wade), both of whom were 20 years old in 2005.  Mr. Merrell and Mr. Wade were friendly with MP, but they were not close friends because of the age difference.  Petitioners briefly sponsored a third rider, CZ,[5] but stopped sponsoring him when they concluded he did not have the skill or dedication to succeed at motocross.

Petitioners made the following oral agreement with each of the unrelated riders[6] they sponsored:  Petitioners would pay the riders' race entry fees, maintain their motorcycles, and transport them to and from motocross events in exchange for 75 percent of the riders' winnings at the amateur level.[7]  Mr. Paquin told the riders that he expected to recover his investment in them if and when the riders became professionals, but

---

[5]It is not clear from the record whether CZ is a minor child or an adult.  Out of caution, we shall refer to him by his initials.

[6]It is not clear whether the same terms applied to MP.

[7]As amateurs, the riders' winnings were limited to racing equipment and gift certificates, some of which were redeemable for cash.  When a rider received racing equipment (or a gift certificate that was redeemable for racing equipment) petitioners did not attempt to divide the equipment but instead allowed the rider to keep it.

petitioners did not reach an agreement with any of the riders concerning petitioners' share of the riders' earnings as professionals.

Motocross races are conducted at the amateur and professional levels. All riders must begin as amateurs and may improve their amateur classification[8] by competing and excelling in motocross races. To compete at the professional level, a rider must be at least 16 years old, must have attained the highest amateur class, and must have accumulated a certain number of additional "points" on the basis of the rider's performance in motocross events.

Amateur riders may earn trophies and gift certificates, some of which are redeemable for cash, but amateur riders are generally ineligible for cash awards.[9] To be eligible for cash prizes a rider generally must compete at the professional level.

_____

[8]Motocross racing organizations generally classify amateur riders on the basis of their skill and experience. For example, in 2005 and 2006 the American Motorcyclist Association (AMA) classified amateur riders as A (the highest class), B (the class below A), or C (the class below B), while the Sierra Motocross Racing Association (SMRA), at least in 2009, classified riders as beginner, junior, or intermediate. The SMRA's 2005 and 2006 rulebooks are not in the record.

[9]The 2005 and 2006 AMA rulebooks define amateur riders as "riders not competing for cash awards" but state, inconsistently, that class A amateur riders may compete for money (or certificates that may be exchanged for money) up to a total purse of $3,000. The record reflects that petitioners' riders rarely, if ever, competed for cash prizes in 2005 and 2006.

The AMA rulebooks for 2005 and 2006 provide that the minimum purse for a motocross "Pro Am" event shall be $3,000.[10]

It is virtually impossible for an amateur rider to make a profit at motocross--indeed, petitioners admit that even if their riders had won every race they entered in 2005 and 2006, petitioners still would have lost money on the activity. A professional rider, however, can earn a profit through a combination of cash prizes and corporate sponsorships. All of the riders on petitioners' team were amateurs in 2005 and 2006, and no rider was close to achieving professional status.[11]

Petitioners observed few business formalities in the motocross racing activity. Petitioners did not prepare a written business plan, did not create a separate entity for the activity, did not investigate whether they needed a business license, and did not open a separate checking account (petitioners paid motocross racing expenses from their personal accounts). Petitioners maintained some records of their motocross-related

---

[10]The recommended payout structure for 10 riders calls for the first-place rider to take 28 percent of the purse, the second-place rider, 22 percent, the third-place rider, 15 percent, and so on, with as many as 16 riders sharing in the purse for a particular race. Professional motocross riders can also earn money for themselves and their teams by attracting corporate sponsors.

[11]At the end of 2006, MP was not yet 16 years old, Mr. Merrell was about halfway through the process of becoming a professional, and Mr. Wade was slightly more than halfway through the process of becoming a professional. Petitioners had only a rough idea of how close any rider was to becoming a professional.

activities and expenses, but the records are incomplete.  For example, petitioners deducted $715 for race entry fees in 2006, but Mr. Paquin testified that the actual entry fees were much greater than $715.  Petitioners also failed to keep track of how much money they spent on gas to drive to and from motocross races in 2006.

Mr. Paquin estimated that he spent, on average, 15-20 hours per week on the motocross racing activity during the years at issue.  Mr. Paquin pursued the activity in his spare time while continuing to work full time at Q&D Construction throughout 2005 and 2006.  Mrs. Thomas-Paquin's role in the activity was more limited.  Although she sometimes attended motocross practices and races, her primary role was to maintain the activity's books and records.  It is not clear how much time Mrs. Thomas-Paquin, who was employed full time during 2005 and 2006, devoted to the motocross activity.

Petitioners reported the following income and deducted the following expenses with respect to the motocross racing activity on their 2005 and 2006 Schedules C, Profit or Loss From Business:

|                                          | 2005     | 2006     |
|------------------------------------------|----------|----------|
| Income                                   |          |          |
| Gross receipts or sales[1]               | $1,025   | $650     |
|                                          |          |          |
| Expenses                                 |          |          |
| Advertising                              | $150     | $65      |
| Car and truck expenses                   | 10,034   | 5,068    |
| Contract labor                           | 500      | 300      |
| Depreciation and sec. 179 expense        | 6,306    | 2,903    |
| Insurance (other than health)            | 575      | 622      |
| Interest                                 | 1,415    | 1,156    |
| Office expenses                          | 200      | 90       |
| Repairs and maintenance                  | 1,540    | 2,350    |
| Supplies                                 | 3,288    | 4,500    |
| Travel                                   | 650      | 1,280    |
| Deductible meals                         | 0        | 255      |
| Other expenses[2]                        | 9,419    | 6,995    |
| Total expenses                           | 34,077   | 25,584   |
|                                          |          |          |
| Net profit or (loss)                     | (33,052) | (24,934) |

[1]Petitioners' Schedule C income in 2005 and 2006 is attributable to gift certificates awarded on the basis of the riders' performance in motocross races.

[2]Petitioners' other expenses included $990 and $715 for entry fees, $2,682 and $1,875 for fuel, $650 and $500 for phone expenses, $2,947 and $2,005 for small equipment, and $2,150 and $1,900 for safety clothing, in 2005 and 2006, respectively.

Petitioners' 2005 and 2006 Federal income tax returns were prepared by a professional tax return preparer (return preparer). Petitioners have used the same return preparer since 2003.[12] Mrs. Thomas-Paquin provided receipts for the return preparer to use in preparing petitioners' 2005 and 2006 Schedules C. Before signing petitioners' 2005 return, Mrs. Thomas-Paquin called the

---

[12]The record does not establish whether the return preparer was a certified public accountant.

return preparer to ask questions.  Mr. Paquin signed the 2005 and 2006 returns without carefully reviewing them.

As of the date of trial petitioners continued to sponsor MP's motocross racing activities but were no longer sponsoring any other riders.  Petitioners stopped sponsoring Mr. Merrell and Mr. Wade in 2008 because the riders apparently lost interest in motocross racing.  None of petitioners' riders, including MP, had achieved professional status as of the date of trial.

On July 24, 2008, respondent issued a notice of deficiency that treated petitioners' income from the motocross racing activity in 2005 and 2006 as other income, disallowed the net operating losses claimed with respect to the motocross racing activity, and imposed an accuracy-related penalty under section 6662(a) for each of the years 2005 and 2006.  Petitioners timely filed a petition in this Court.

## Discussion

### I.  Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving the determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  If, however, the taxpayer presents credible evidence with respect to any factual issue relevant to determining the taxpayer's liability, section 7491(a)(1) shifts the burden of proof to the Commissioner, but only if the taxpayer

has complied with the requirements of the Internal Revenue Code to substantiate items, has maintained all required records, and has complied with all reasonable requests by the Commissioner for witnesses, documents, information, and meetings. Sec. 7491(a)(2). Petitioners do not contend that section 7491(a)(1) applies, and the record does not permit us to conclude that petitioners have satisfied the requirements of section 7491(a)(2). Accordingly, petitioners bear the burden of proving they were entitled to deduct the net operating losses from their motocross racing activity for 2005 and 2006.

## II. Petitioners' Motocross Activity

Respondent contends that the losses from petitioners' motocross racing for 2005 and 2006 are not deductible because the activity was "not engaged in for profit" within the meaning of section 183. Section 183(a) disallows deductions attributable to an activity not engaged in for profit, except as provided in section 183(b). Section 183(b) allows (1) deductions that would be allowable without regard to whether or not such activity is engaged in for profit, sec. 183(b)(1), and (2) a deduction equal to the amount of the deduction that would be allowable if the activity were engaged in for profit, but only to the extent that the gross income from the activity for the taxable year exceeds the deductions allowable under section 183(b)(1), sec. 183(b)(2).

See also, e.g., <u>Antonides v. Commissioner</u>, 91 T.C. 686, 693 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212(1) and (2) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

The U.S. Court of Appeals for the Ninth Circuit has held that an activity is engaged in for profit if the taxpayer's "predominant, primary or principal" objective in engaging in the activity is to realize an economic profit independent of tax savings.[13] <u>Wolf v. Commissioner</u>, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212. Whether a taxpayer is engaged

_____

[13]Although this case was tried as a small tax case subject to sec. 7463(b) and is not appealable, this Court generally applies the law of the circuit to which an appeal would normally lie if the case were appealable. Cf. <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). But for the provisions of sec. 7463(b), the decision in this case would be appealable to the U.S. Court of Appeals for the Ninth Circuit. See sec. 7482(b)(1)(A).

in an activity for the primary purpose of making a profit is a question of fact. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); see also Synnestvedt v. Commissioner, T.C. Memo. 1987-31 (motocross racing activity involving taxpayers' son was an activity not engaged in for profit within the meaning of section 183). The taxpayer's objective of making a profit need not be reasonable but must be actual and honest. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, supra at 425-426; sec. 1.183-2(a), Income Tax Regs. In determining whether a taxpayer had a bona fide profit objective, greater weight is given to objective facts than to the taxpayer's statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors that should normally be considered in determining whether a taxpayer has the required profit objective with respect to an activity: (1) The manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or

dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation.

No single factor is determinative, and the determination should not be made solely because the number of factors indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa. Golanty v. Commissioner, supra at 426; sec. 1.183-2(b), Income Tax Regs. Rather, all facts and circumstances with respect to the activity must be taken into account. Sec. 1.183-2(b), Income Tax Regs. All nine factors do not necessarily apply in every case. Green v. Commissioner, T.C. Memo. 1989-436; see also Akelis v. Commissioner, T.C. Memo. 1989-182.

A.    Manner in Which the Taxpayer Carries On the Activity

The fact that a taxpayer conducts an activity in a businesslike manner and maintains complete and accurate books and records may indicate the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs.; see Stephens v. Commissioner, T.C. Memo. 1990-376 (taxpayer operated his horse breeding activity in a businesslike manner where he entered into formal written contracts with stallion owners); but see Synnestvedt v. Commissioner, supra (taxpayers' use of a separate checking

account to pay their son's motocross racing expenses was insufficient to establish a businesslike manner of operation). Similarly, a change in operating methods or abandonment of unprofitable methods may indicate that the taxpayer has the requisite profit objective.  Sec. 1.183-2(b)(1), Income Tax Regs.

Petitioners did not carry on the motocross racing activity in a businesslike manner.  Petitioners did not prepare a written business plan, did not create a separate legal entity, did not investigate whether they needed a business license, did not open a separate checking account, and did not maintain complete and accurate books and records.  Moreover, petitioners did not carefully evaluate their riders' skills before inviting them to join the team--indeed, one of the riders was Mr. Paquin's son, who petitioners admit had no particular skill in motocross racing.  Most troubling of all, petitioners never reached agreements with the unrelated riders regarding petitioners' share of any income the riders might earn as professionals.  Absent such an agreement, it is difficult to imagine how petitioners could have ever earned a profit from the motocross racing activity.  This factor strongly favors respondent.

B.   The Expertise of the Taxpayer or His Advisers

Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with experts in such practices, may indicate the

activity is engaged in for profit.  Sec. 1.183-2(b)(2), Income
Tax Regs.  In analyzing this factor, a distinction must be drawn
between expertise in the mechanics of an activity and expertise
in the business practices of the activity.  <u>Zidar v.
Commissioner</u>, T.C. Memo. 2001-200 (citing <u>Burger v. Commissioner</u>,
809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523).
In <u>Zidar v. Commissioner</u>, <u>supra</u>, we held that a taxpayer's stock
car racing activity was an activity not engaged in for profit
where the taxpayer had a longstanding interest in stock car
racing but no expertise in the economics or business of owning a
stock car.  The facts of this case are analogous:  Mr. Paquin had
a longstanding interest in motocross racing, but there is no
evidence that petitioners studied or understood the accepted
business practices of motocross racing or consulted experts in
the field.  Petitioners' lack of knowledge and expertise was
evident from their testimony:  Petitioners were uncertain how an
amateur motocross rider becomes a professional and had only a
general idea how close any of their riders were to achieving
professional status.  This factor strongly favors respondent.

C.  <u>The Time and Effort Expended by the Taxpayer in
Carrying On the Activity</u>

The time and effort devoted to an activity may indicate that
the activity is engaged in for profit, particularly where the
activity does not have a substantial personal or recreational
aspect.  Sec. 1.183-2(b)(3), Income Tax Regs.; see also <u>Sousa v.</u>

Commissioner, T.C. Memo. 1989-581 (amount of time spent on a fishing and boating activity not necessarily indicative of profit objective where taxpayer derived great personal pleasure from the activity). A taxpayer's withdrawal from another occupation to devote most of his time to the activity may also indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(3), Income Tax Regs. Although Mr. Paquin devoted a substantial amount of his spare time to the motocross racing activity in 2005 and 2006, the record reflects that Mr. Paquin derived a great deal of personal pleasure from the activity. Accordingly, the amount of time Mr. Paquin spent on the activity is not necessarily indicative of a profit objective. This factor is neutral.

D.    Expectation That Assets Used in Activity May Appreciate in Value

Petitioners concede that they had no expectation that any of the assets used in the motocross racing activity would appreciate in value.[14]  This factor does not apply.

---

[14]In at least two prior cases we have considered whether a motocross racing activity was an activity not engaged in for profit within the meaning of sec. 183. See McCarthy v. Commissioner, T.C. Memo. 1997-436, vacated and remanded without published opinion 164 F.3d 618 (2d Cir. 1998); Synnestvedt v. Commissioner, T.C. Memo. 1987-31. We did not discuss in either case whether the taxpayer expected the assets used in the business to appreciate in value.

E.   The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

Even if an activity is presently unprofitable, the fact that the taxpayer has previously converted a similar activity from unprofitable to profitable status may indicate the activity is engaged in for profit.  Helmick v. Commissioner, T.C. Memo. 2009-220; sec. 1.183-2(b)(5), Income Tax Regs.  On the other hand, the taxpayer's lack of prior experience does not necessarily indicate that the activity was not engaged in for profit.  Pirnia v. Commissioner, T.C. Memo. 1989-627 (citing sec. 1.183-2(b)(5), Income Tax Regs.).  Petitioners had no prior experience in motocross racing or the business of motocross racing before engaging in the activity.  This factor does not apply.

F.   The Taxpayer's History of Income or Losses With Respect to the Activity

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit objective.  Sec. 1.183-2(b)(6), Income Tax Regs.; see also Golanty v. Commissioner, 72 T.C. at 426.  A series of losses during the startup phase of an activity does not necessarily indicate the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.  But where losses continue to be sustained beyond the customary startup period, that may be an indication the activity is not engaged in for profit.  Id.

Petitioners reported net losses from the motocross racing activity of $33,052 and $24,934 in 2005 and 2006, respectively, and have never earned a profit from the activity. Petitioners suggest, however, that the activity was still in its startup phase during the years at issue and imply that the limited history of losses should not count against them.

Petitioners presented no evidence regarding the customary startup period in the motocross racing industry. Moreover, petitioners continued to sponsor Mr. Merrell and Mr. Wade until 2008 (when Mr. Merrell and Mr. Wade stopped racing for personal reasons) and continued to sponsor MP as of the trial date.[15] Petitioners' continued investment in the motocross racing activity despite substantial losses suggests the activity was not carried on for profit. This factor favors respondent.

G.    The Amount of Occasional Profits, If Any, Which Are Earned

The amount of occasional profits, if any, in relation to the amount of losses and in relation to the taxpayer's investment may indicate the presence or absence of a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs.; see also Harston v. Commissioner, T.C. Memo. 1990-538, affd. without published opinion 936 F.2d 570 (5th Cir. 1991). An opportunity to earn a substantial profit in a speculative venture is ordinarily

[15]The record does not establish whether petitioners continued to deduct motocross racing expenses after 2006.

sufficient to demonstrate that the activity is engaged in for profit.  Sec. 1.183-2(b)(7), Income Tax Regs.

Petitioners' motocross racing activity generated negligible gross income--$1,025 in 2005 and $650 in 2006--relative to the expenses incurred.  Petitioners testified that they hoped to recover their investment and earn a substantial ultimate profit when their riders became professionals.  However, petitioners had no agreements with their riders concerning petitioners' share of any prize or sponsorship money the riders might one day earn as professionals.  Absent such an agreement, petitioners' likelihood of earning a profit from the activity was not merely speculative but nonexistent.  This factor favors respondent.

H.    The Financial Status of the Taxpayer

The fact that the taxpayer has substantial income from sources other than the activity may indicate the activity is not engaged in for profit (particularly if losses from the activity generate tax benefits).  Sec. 1.183-2(b)(8), Income Tax Regs. Conversely, the fact that the taxpayer does not have substantial income from other sources may indicate the activity is engaged in for profit.  Id.  Petitioners earned wage income of $173,782 and $178,261 in 2005 and 2006, respectively.  By deducting the losses associated with motocross racing, petitioners were effectively able to shelter $33,052 and $24,934 of their income from tax in 2005 and 2006, respectively.  This factor favors respondent.

I.    Elements of Personal Pleasure or Recreation

Personal motives for carrying on an activity may indicate the activity is not engaged in for profit, especially where there are recreational or personal elements involved.  Sec. 1.183-2(b)(9), Income Tax Regs.  However, the mere fact that the taxpayer derives personal pleasure from an activity does not establish that the activity is not engaged in for profit if the activity is, in fact, engaged in for profit as evidenced by other factors.  Id.  Petitioners--particularly Mr. Paquin--derived significant personal pleasure and recreation from the motocross racing activity.  None of the other factors discussed above indicate that petitioners' motocross racing activity was, in fact, engaged in for profit.  This factor strongly favors respondent.

J.    Summary

Of the nine factors listed in section 1.183-2(b), Income Tax Regs., six support the conclusion that petitioners' motocross racing activity was an activity not engaged in for profit in 2005 and 2006, one is neutral, and two are not applicable. Accordingly, we sustain respondent's determination that petitioners' motocross racing activity was an activity not engaged in for profit within the meaning of section 183.

III. Accuracy-Related Penalty

Section 6662(a) imposes a 20-percent penalty on any portion of an underpayment of tax required to be shown on a return. The penalty applies to any portion of an underpayment that is attributable to, inter alia, negligence or disregard of rules or regulations, sec. 6662(b)(1), or any substantial understatement of income tax, sec. 6662(b)(2). For purposes of section 6662, negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and disregard includes any careless, reckless, or intentional disregard. Sec. 6662(c). Section 1.6662-3(b)(1), Income Tax Regs., provides that negligence includes any failure to exercise ordinary and reasonable care in the preparation of a tax return but does not include a return position that has a reasonable basis. Reasonable basis is a relatively high standard that is not satisfied by a return position that is merely arguable. Sec. 1.6662-3(b)(3), Income Tax Regs. For a taxpayer other than a C corporation, a substantial understatement is any understatement that exceeds 10 percent of the tax required to be shown on the return for the taxable year, or $5,000, whichever is greater. Sec. 6662(d)(1).

The Commissioner has the burden of production in any court proceeding with respect to any penalty or addition to tax. Sec. 7491(c). To meet his burden, the Commissioner must come forward

with sufficient evidence that it is appropriate to impose the penalty or addition to tax but is not required to produce evidence relating to reasonable cause or other defenses.[16] Wheeler v. Commissioner, 127 T.C. 200, 206 (2006), affd. 521 F.3d 1289 (10th Cir. 2008); Swain v. Commissioner, 118 T.C. 358, 363 (2002); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner has satisfied his burden of production, the taxpayer bears the burden of proving that the Commissioner's determination to impose the penalty or addition to tax is incorrect. Higbee v. Commissioner, supra at 447.

Respondent satisfied his burden of production under section 7491(c) by showing that the understatements of tax for 2005 and 2006 exceeded the greater of 10 percent of the amount required to be shown on petitioners' returns or $5,000. Thus, petitioners must prove that the Commissioner's determination to impose the

---

[16]The Commissioner's obligation under sec. 7491(c) is conditioned on the taxpayer assigning error to such penalty or addition to tax. Wheeler v. Commissioner, 127 T.C. 200, 206-207 (2006), affd. 521 F.3d 1289 (10th Cir. 2008); Swain v. Commissioner, 118 T.C. 358, 364-365 (2002). If the taxpayer fails to assign error to the penalty or addition to tax, the taxpayer is deemed to have conceded the issue under Rule 34(b)(4).

Respondent contends that petitioners conceded the sec. 6662(a) penalties because they did not assign error to the penalties in their petition. We disagree. Although petitioners failed to assign error to the sec. 6662(a) penalties in their petition, they raised the issue at trial by offering testimony regarding the preparation of their 2005 and 2006 Federal income tax returns, and respondent did not object. We therefore conclude the issue was tried by consent of the parties and is properly before the Court. See Rule 41(b).

section 6662(a) penalties is inappropriate. Petitioners contend that the penalties are inappropriate because they had reasonable cause for the understatements and acted in good faith. Specifically, petitioners argue that they relied on their return preparer to prepare their 2005 and 2006 Federal income tax returns.

Section 6664(c) provides that the section 6662(a) penalty shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith. Whether a taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all relevant facts and circumstances, including the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important fact is the taxpayer's effort to assess the proper liability. Id.

Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith where the taxpayer establishes that: (1) The adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner,

115 T.C. 457, 477 (2000); <u>Sklar, Greenstein & Scheer, P.C. v.</u> <u>Commissioner</u>, 113 T.C. 135, 144-145 (1999).

Petitioners have not established that their reliance on their return preparer was reasonable or in good faith. First, petitioners presented no evidence with respect to their return preparer's experience or qualifications. Mrs. Thomas-Paquin testified that she was uncertain of the return preparer's qualifications or whether the return preparer was a certified public accountant. Second, petitioners have not established that they provided necessary and accurate information to the return preparer. Mrs. Thomas-Paquin testified that she discussed the motocross racing activity with the return preparer and provided her with all of the receipts from the business. When she was asked specifically what she discussed with the return preparer, however, Mrs. Thomas-Paquin testified, inconsistently, that it was Mr. Paquin who spoke with the return preparer. Petitioners presented no evidence regarding what, if anything, Mr. Paquin discussed with the return preparer. Finally, petitioners have not established that they actually relied in good faith on the return preparer's judgment. On the contrary, Mrs. Thomas-Paquin testified inconsistently with respect to her conversations with the return preparer, and Mr. Paquin testified that he simply signed the 2005 and 2006 returns without carefully reviewing them. We therefore sustain respondent's determination that

petitioners are liable for the section 6662(a) penalties for 2005 and 2006.

IV.  Conclusion

On the basis of the foregoing, we conclude that petitioners' motocross racing activity was an activity not engaged in for profit in 2005 and 2006 within the meaning of section 183 and that petitioners were not entitled to deduct expenses associated with the activity (except to the extent of their gross income from motocross racing in 2005 and 2006).  We further conclude that petitioners are liable for the section 6662(a) accuracy-related penalties.  Because it does not appear that respondent, in computing the 2005 and 2006 deficiencies, allowed petitioners to deduct expenses associated with the activity to the extent of the gross income derived from the activity, as provided by section 183(b), a Rule 155 computation is necessary.

We have considered the parties' remaining arguments and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.[17]

---

[17]Petitioners argued in their petition and at trial that the auditor who reviewed their case made various substantive and procedural errors.  We need not address this argument, however, because it is well established that a trial in the Tax Court is a proceeding de novo and our determination must be based on the merits of the case and not on any previous record developed at the administrative level.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974).

To reflect the foregoing,

Decision will be entered under

Rule 155.